In the Matter of FINSILVER, STILL & Moss, INC., Appellant, against GOLDBERG, MAAS & Co., INC., Respondent.

In the Matter of GOLDBERG, MAAS & Co., INC., Respondent; FINSILVER, STILL & Moss, INC., Appellant.

(Argued March 21, 1930; decided May 6, 1930.)

*Joseph Dannenberg* for appellant. Section 4-a of the Arbitration Law is valid for it does not violate section 2 of article I of the Constitution of the State of New York, nor the Fourteenth Amendment to the United States Constitution. (*Bullard* v. *Grace Co.,* 240 N. Y. 388; *Whitlock* v. *Ledford,* 82 Ky. 391; *Mitchel* v. *Curran,* 1 Mo. App. 453; *Dexter* v. *Young,* 40 N. H. 30; *Ruckman* v. *Ramson,* 35 N. J. L. 565; *Gowen* v. *Pierson,* 166 Penn. St. 258; *Duckworth* v. *Diggles,* 139 Mass. 51; *Matter of Berkovitz* v. *Arbib & Houlberg, Inc.,* 230 N. Y. 261; *Tutein* v. *Hudson Valley Coke & Products Corp.,* 249 N. Y. 84;

*Wenger & Co.* v. *Propper Silk Hosiery Mills, Inc.,* 239
N. Y. 199; *Hosiery Mfg. Corp.* v. *Goldston,* 238 N. Y. 22;
*People ex rel. McLaughlin* v. *Police Comrs.,* 174 N. Y. 450;
*People* v. *Quigg,* 59 N. Y. 83; *Hanna* v. *Mitchell,* 202 App.
Div. 504; *Divan* v. *Massarene,* 199 App. Div. 872; *Conti-
nental Securities Co.* v. *Interboro,* 118 Misc. Rep. 11; 200
App. Div. 794; *Sweeting* v. *American Knife Co.,* 226 N. Y.
119; 250 U. S. 596; *Matter of King,* 168 N. Y. 53.) It was
unnecessary to have a trial by jury because no issues
were raised and all of the facts were conceded. (*Poel* v.
*Brunswick-Balke-Collender Co.,* 216 N. Y. 310; *Waldorf* v.
*Simpson,* 15 App. Div. 299; *Wheeler* v. *Mowers,* 16 Misc.
Rep. 143; *Chu Pawn* v. *Irwin,* 31 N. Y. Supp. 724; *Breese*
v. *U. S. Telegraph Co.,* 48 N. Y. 132; *Rozen* v. *Drydock,* 7
Misc. Rep. 130; *Ellis* v. *Keeler,* 126 App. Div. 343; *Upton*
v. *Tribilcock,* 91 U. S. 50.)

*Wallace T. Stock* and *Edwin L. Garvin* for American
Arbitration Association, *amicus curiæ.* The statute is
constitutional and the Appellate Division erroneously
gave it a meaning unexpressed, not intended by the Legis-
lature, and derogatory of established rights. It does not
deprive a participating party of any rights duly preserved
by objection recorded before the arbitrators. (*Willis* v.
*City of Rochester,* 219 N. Y. 427; *People* v. *Crane,* 214
N. Y. 154; *Barrett* v. *Indiana,* 229 U. S. 26; *People* v.
*Bradley,* 207 N. Y. 592; *Matter of Bullard* v. *Grace Co.,*
240 N. Y. 388; *Jones* v. *Jones,* 108 N. Y. 415; *Matter of
Smith,* 197 N. Y. Supp. 373; *Harkness* v. *Hyde,* 98 U. S.
476; *Van Courtland* v. *Underhill,* 17 Johns. 405; *Fudikar*
v. *Guardian Mutual Ins. Co.,* 62 N. Y. 392; *Halstead* v.
*Seaman,* 82 N. Y. 27; *Berizzi* v. *Krausz,* 239 N. Y. 315;
*Kent* v. *French,* 76 Iowa, 187.) Assuming that section 4-a
has the meaning put upon it by the court below, there is
neither denial of the right of jury trial nor due process of
law. (*Nagy* v. *Arcas Brass & Iron Co., Inc.,* 213 App.

Div. 830; 242 N. Y. 97; *Allied Mutuals Liability Ins. Co. v. Interstate Cork Co., Inc.*, 134 Misc. Rep. 504.)

*Harold M. Brown* and *Charles S. Rosenberg* for respondent. Section 4-a of the Arbitration Law is invalid in that it violates section 6, article 1 of the New York State Constitution and the Fourteenth Amendment of the United States Constitution. (*Gordon* v. *United States*, 74 Sup. Ct. 35; 7 Wall. [U. S.] 188; *Red Cross Line* v. *Atlantic Trust Co.*, 264 U. S. 109; *People* v. *Nash*, 111 N. Y. 316; *Austin* v. *Searing*, 16 N. Y. 112; *Gitt* v. *Marqusee*, 140 App. Div. 382; *Bloomer* v. *Sherman*, 2 Edw. Ch. 452; *Matter of Berkovitz* v. *Arbib & Houlberg, Inc.*, 230 N. Y. 261; *Stuart* v. *Palmer*, 74 N. Y. 183; *Meacham* v. *Jamestown R. R. Co.*, 211 N. Y. 346; *Riglander* v. *Star Co.*, 98 App. Div. 101; 181 N. Y. 531; *People* v. *Walter*, 68 N. Y. 403.) Section 4-a of the Arbitration Law violates section 2 of article 1 of the State Constitution. (*Greason* v. *Keteltas*, 17 N. Y. 491; *Snell* v. *Niagara Paper Mills*, 193 N. Y. 433; *Smith* v. *Western Pacific R. R. Co.*, 144 App. Div. 181; 203 N. Y. 499.) No contract of purchase and sale was entered into by the appellant because the alleged acceptance of the appellant dated October 3, 1928, differed from the offer of the respondent dated October 2, 1928. (*Senner & Kaplan Co.* v. *Gera Mills*, 185 App. Div. 562; *Davidge* v. *Velie*, 95 Misc. Rep. 511; *Hubbs & Co.* v. *Richard*, 119 Misc. Rep. 436; 212 App. Div. 868; *Feigel & Bros., Inc.*, v. *Doll & Sons, Inc.*, 186 N. Y. Supp. 529; *Machinery Utilities Co., Inc.*, v. *Fry*, 224 App. Div. 392; *Eustathopoulo* v. *Gillespie*, 218 App. Div. 179; *General Silk Importing Co., Inc.*, v. *Smith*, 200 App. Div. 750; *Nundy* v. *Matthews*, 34 Hun, 74.) If section 4-a is valid then the issues of fact raised by the answering affidavit of the respondent on the motion below should have been referred to a jury for determination pursuant thereto. (*Matter of Gresham & Co., Ltd.*, 202 App. Div. 211; *Matter of Palmer & Pierce*,

*Inc.*, 195 App. Div. 523; *Matter of Schwartzenbach,* 203 App. Div. 845.)

CARDOZO, Ch. J. The defendant in this arbitration proceeding, Goldberg, Maas & Co., Inc., signed and delivered to the plaintiff, Finsilver, Still & Moss, Inc., an order for the purchase of twenty-five pieces of merchandise, described as style number 195, the price to be six dollars and ninety-five cents per yard, and delivery to be made at stated times. There was an arbitration clause as follows: "All claims, demands, disputes, differences, controversies and misunderstandings arising under, out of, or in connection with, or in relation to this contract, shall be submitted to and be determined by arbitration, pursuant to the Arbitration Law of the State of New York, in The Tribunal of Justice known as the Court of Arbitration established and conducted by the American Arbitration Association and in accordance with its Rules."

The plaintiff, upon receipt of the order, notified the defendant in writing of its acceptance, adding a description of the merchandise as " Karavan Kamel Kloth," forty-eight inches in width and thirty to thirty-five in length.

A dispute arising thereafter as to the width of goods delivered, the defendant gave notice to the plaintiff that future deliveries would be rejected. Upon this the plaintiff made demand for arbitration. A proceeding, based upon a submission, went forward to the stage of an award, but in the end was abortive for lack of an acknowledgment. That proceeding having failed, another was begun. In default of a new submission, there was adherence to the forms prescribed by the executory agreement. Under this the rules of the American Arbitration Association were to govern the procedure. The defendant was notified by the association that arbitration was demanded, and was requested to join in the selection of an arbitrator.

The request having been ignored, the association, in adherence to its rules, made its own choice of an arbitrator from the members of a panel, and so notified the defendant, informing it also of the time and place of hearing. Again the defendant paid no attention to the warning. Upon its failure to respond, the arbitration proceeded in its absence. The arbitrator made an award of damages in favor of the plaintiff, upon which judgment was thereafter entered pursuant to an order of the court. The court at the same time denied a motion by the defendant for a perpetual injunction, or in the alternative for the submission to a jury of the question of the existence of a contract. Upon appeal to the Appellate Division the judgment and order were reversed on the ground that there had been an unconstitutional denial of due process of law.

The Arbitration Law of this State, as first enacted in 1920 (Cons. Laws, ch. 72), declared agreements for the arbitration of future differences to be valid and irrevocable, but did not set up any machinery whereby an award would be effective in the absence of an order that arbitration should proceed (Arbitration Law, § 3; *Matter of Bullard* v. *Grace Co.*, 240 N. Y. 388). The workings of the statute were thought to have disclosed inconveniences as a result of that omission. Thus, where one of three arbitrators withdrew before the proofs had been submitted, there was need of a new order to give validity to the proceeding continued by the others (*Matter of Bullard* v. *Grace Co.*, *supra*). Still more hapless was the plight of a party to a controversy if his adversary was a nonresident, without the jurisdiction. The process of the court could not reach the recalcitrant opponent to coerce response to a petition that the arbitration should proceed. In a much litigated case, a claimant so situated tried the experiment of an arbitration without preliminary judicial sanction. The adverse party, resident in England, was notified of the proceeding, but refused to have a part in it,

and later contested the jurisdiction when sued on the award abroad. On the authority of our decision in *Matter of Bullard* v. *Grace Co.* (*supra*), the House of Lords decided that the award was ineffective, though declaring at the same time that according to its own view of the law and the practice in Great Britain, an antecedent order was not an indispensable condition (*Liverpool Marine & Gen. Ins. Co., Ltd.*, v. *Bankers & Shippers Ins. Co.*, Jan. 29, 1926, reported in 24 Ll. L. Rep. 85, H. L., reversing a decision of the Court of Appeal reported in the New York Law Journal of March 4, 1925, *sub nom. Bankers & Shippers Ins. Co.* v. *Liverpool Marine & Gen. Ins. Co., Ltd.*; cf. *Matter of Bullard* v. *Grace Co.*, *supra*, p. 396.)

Faced by these mischiefs, the Legislature by an amendment adopted in 1927 added to the Arbitration Law a section, designated 4-a, which reads as follows: " Where pursuant to a provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract, or a submission described in section two hereof, an award has been, or is hereafter rendered, without previous application to the supreme court, or a judge thereof, as required by section three hereof, such award shall notwithstanding anything contained in section three hereof be valid and enforceable according to its terms, subject, nevertheless to the provisions of this section. At any time before a final judgment shall have been given in proceedings to enforce any such award whether in the courts of the state of New York, or elsewhere, any party to the arbitration who has not participated therein may apply to the supreme court, or a judge thereof, to have all or any of the issues hereinafter mentioned determined, and if, upon any such application the court, or a judge thereof, or a jury, if one be demanded, shall determine that no written contract providing for arbitration was made, or submission entered into, as the case may be, or, that such party was not in default by failing to comply with the terms thereof, or

that the arbitrator, arbitrators and, or umpire was, or were not appointed or did not act, pursuant to the written contract, then and in any such case, the award shall thereupon become invalid and unenforceable. Where any such application is made any party may demand a jury trial of all or any of such issues, and if such a demand be made, the court or a judge thereof shall make an order referring the issue or issues to a jury in the manner provided by law for referring to a jury issues in an equity action."

This section of the statute has been condemned by the Appellate Division as a denial of due process. Arbitration presupposes the existence of a contract to arbitrate. If a party to a controversy denies the existence of the contract and with it the jurisdiction of the irregular tribunal, the regular courts of justice must be open to him at some stage for the determination of the issue. The right to such a determination, either at the beginning or at the end of the arbitration or in resistance to an attempted enforcement of the award, is assured by the Constitution as part of its assurance of due process of law. In the view of a majority of the Appellate Division, the statute nullifies this right, or burdens it unreasonably, by attaching a condition that if the contract be upheld, the party unsuccessfully disputing its existence shall be deemed to have waived the benefit of a hearing before the arbitrators, though the proceeding be still pending.

We think the holding has its origin in a misconstruction of the statute, its aim and its effect. What the amendment seeks to do is to give validity to the practice which in the opinion of the English judges or most of them was permissible already without the aid of an amendment. A "party might not wish to enter upon an expensive arbitration which might be a nullity, and he was given power to get the validity of the arbitration determined beforehand by the court. But this * * * still left it free to a party whose arbitration tribunal was

duly constituted under the contract, to proceed at his risk, and enforce his award, if no objection could be raised to it " (SCRUTTON, L. J., in *Bankers & Shippers Ins. Co. of N. Y.* v. *Liverpool Marine & Gen. Ins. Co., Ltd.*, Court of Appeal, *supra*). This being the aim, the question is whether there has been any infringement of constitutional guaranties in making it effective. Two classes of parties are covered by the statute, those who stay out of the arbitration, and those who go in. A party to a controversy, informed by his adversary that there is to be a hearing by an arbitrator, may choose to stay out of the arbitration altogether. If he does, the statute is explicit in the protection of his rights. He may be heard by a court or judge in support of his contention that the arbitration is of no effect in that he never bound himself to arbitrate, and may have the issues of fact, if any, submitted to a jury. Even then, it is not too late to have a part in the arbitration if the proceeding is still open. There is no suggestion in the statute that as a penalty for resistance he shall forfeit any rights that would otherwise be his. The proceeding will often be kept open by a stay or by adjournments. If so, the unsuccessful denial of the jurisdiction of the arbitrators will not prejudice the opportunity to go before them on the merits.

So much for the party who stays out of the arbitration altogether, or who seeks a hearing in the court, with the right to trial by jury, before electing to go in. Rights substantially as great, however, are assured to the party who is in from the beginning. Nothing in the statute denies to one so situated the right to participate in the arbitration, and still contest the jurisdiction. On the contrary, the section opens with the declaration that the award shall be valid, though made without previous application to the court, in those cases and in those only where the arbitration is " pursuant to " the provisions of a contract. If it is not pursuant to a contract, if in truth

there is no contract at all or none calling for arbitration, the self-constituted tribunal is a nullity, without power to bind or loose by force of its decision. We assume that circumstances may exist in which a party to an arbitration, joining in its proceedings without protest or disclaimer, may be found to have joined by implication in the appointment of the arbitrators, and to have confirmed their jurisdiction, if otherwise defective. The limits of this implication and its effect may be postponed for definition until the event creates the need. On the other hand, the rule is well established and of general validity that where there is seasonable protest or disclaimer in response to a claim of jurisdiction, the protest or disclaimer is not nullified by proceeding thereafter to a hearing on the merits (*Harkness* v. *Hyde*, 98 U. S. 476, 479; *Southern Pac. Co.* v. *Denton*, 146 U. S. 202, 209; *Hassler, Inc.*, v. *Shaw*, 271 U. S. 195; *Jones* v. *Jones*, 108 N. Y. 415, 425). We see no reason to doubt that the rule applies as fully to a proceeding before an arbitrator (*Kent* v. *French*, 76 Iowa, 187) as to one before a referee or before any board or officer who asserts the right to judge. The decision in *Christman* v. *Moran* (9 Penn. St. 487), to the effect that participation in the hearing is to be deemed a waiver of the protest was made many years ago (1848), before the underlying principle was clearly understood. It cannot be accepted in this State as embodying existing law. In the light of existing law we approach the amendment and determine its effect. Certain it is that in the terms of the statute there is no express denial of the right to join in the proceeding under protest and then contest the jurisdiction. If denial was intended, it has been left to doubtful implication. The implication should be clear before a right so fundamental will be held to have been lost. In the absence of a contract expressing a consent to arbitrate, an award by an arbitrator is an act of usurpation. Nowhere does the statute say that its quality shall be different. As

an act of usurpation, it is subject to be challenged whenever and wherever it is put forward by the usurper as a source of rights and duties. Till there is an adjudication of its validity by a competent judicial officer, as for example upon a motion after due notice to confirm or to vacate it, the issue of jurisdiction is open at the instance and for the benefit of any litigant aggrieved.

We are not forgetful in all this of the element of obscurity introduced into the statute by the description of the remedy available to a litigant who does not fight the arbitration from within, but keeps out from the beginning. Why say that such a one may attack the jurisdiction of the arbitrators if others may do the same? The task of judicial construction would be easier if statutes were invariably drafted with unity of plan and precision of expression. Indeed, adherence to the same standards would be useful also in opinions. The ideal being unattainable, we must not exaggerate the significance of deviations from the perfect norm. Very possibly the description of the remedy had its origin in excess of caution. More probably the purpose was to assure to one so situated the privilege of a jury trial, which was then explicitly conceded. By contrast, one who fights from within, and has had a part in the proceeding, may lose the privilege of a jury in his attack on jurisdiction and be forced to abide by the decision of a judge. The motion to confirm is equivalent to a suit in equity to carry into effect the terms of the agreement and the arbitration had thereunder. In suits for specific performance there is no constitutional right to the verdict of a jury, though the existence of a contract be the basis of the controversy.

We hold that a party who joins in an arbitration after seasonable protest has the right, none the less, to contest by appropriate forms of challenge the jurisdiction of the arbitrators, and that this right has not been taken away by reasonable implication through the concession of a

particular remedy to a party who stays out. In so holding we are not to be understood as assenting to the view that there would be a denial of due process of law if the right had been withheld. There is no need to inquire whether due process of law will permit the Legislature to say that a party to such a controversy, failing in his challenge to the jurisdiction of the arbitrators after a contest in the court, shall be penalized thereafter by forfeiting the right to a hearing before the arbitrators while the proceeding is still open. It is a very different thing to say that to take voluntary part before the arbitrators in a trial upon the merits shall operate thereafter as a waiver of the right to contest the jurisdiction. Such a result has been worked out, in one State at least, without the aid of any statute (*Christman* v. *Moran, supra*). The conclusion may have been wrong, but there is little reason to believe that it was also unconstitutional. Such cases as *York* v. *Texas* (137 U. S. 15, 20, 21); *Western Life Ind. Co.* v. *Rupp* (235 U. S. 261, 271, 272), and *Chicago Life Ins. Co.* v. *Cherry* (244 U. S. 25, 29) are sign posts pointing us with distinctness along another route. The party who contests the jurisdiction may keep out. If he chooses to go in, the Legislature may say to what extent the going shall be interpreted as a waiver of other rights. In this case it has been generous, and has said that though in, he may wage the contest as if out.

The question remains as to the remedy, if any, that should have been accorded to the defendant upon its motion for an injunction and for alternative relief. It had refrained from taking part in the hearings before the arbitrator. That being so, by the very terms of the statute, it was entitled to a jury trial as to the existence of a contract, if any issue of fact was raised by the petition and the answer. We think an issue, not frivolous, remains to be determined. The order for the goods, it will be remembered, calls for twenty-five pieces of style

No. 195, and does not otherwise describe them. The acceptance adds to the description a statement of the width and length. The break between the parties had its origin in a dispute about the width. Whatever the merits of the dispute, there was a variance in form at least between offer and assent. The plaintiff insists that the variance was unsubstantial, that it was one in form only (Williston, Contracts, § 78). There was, so it insists, a standard length and width, which were identified with certainty by the style number without more (*Mesibov, etc., Inc.*, v. *Cohen Bros. Mfg. Co., Inc.*, 245 N. Y. 305, 312). Whether this is so is a question that must be determined after trial. A suggestion, too, there is that the defendant assented to the variance, if there was any, by going forward with performance and accepting a delivery (*Pettibone* v. *Moore*, 75 Hun, 461, 464; Williston, Contracts, § 90), but this in turn is met by explanation or denial. Again a trial is necessary for choice between conflicting claims. The arbitration clause falls if a contract was never made.

The judgment of the Appellate Division vacating the award should be reversed and the judgment of the Special Term affirmed without costs to either party.

The order of the Appellate Division perpetually enjoin ing the enforcement of the award should be modified by directing a trial by jury of the existence of a contract, and staying the enforcement of the judgment until the hearing and determination of the issues so referred.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.