Habéis, J.
The plaintiff has had judgment at Special Term, decreeing that certain arbitration proceedings which are alleged to have taken place between the plaintiff and defendant within the State of Ohio are null and void, because, due to lack of jurisdiction of the Court of Common Pleas, County of Hamilton, State of Ohio, the arbitration board did not acquire jurisdiction over the plaintiff in such arbitration proceedings. By such judgment the defendant is directed to vacate and discharge of record such award or judgments as it may have obtained against the plaintiff, and the defendant is restrained from taking any further proceedings with regard to such award or judgments, *624 all this with costs in favor of the plaintiff against the defendant. From this judgment of the Special Term, the defendant has brought this appeal to this court and on such appeal asks that the judgment be reversed and the injunctions therein contained vacated, with costs.
In the following discussion, reference will be made to the plaintiff as ££ Prosperity Company”, and to the defendant as <£ American Company ”, The plaintiff is a New York corporation, and the defendant is a corporation organized únder the laws of the State of Ohio, and on May 15,1911, filed a certificate to do business in Ihe State of New York, which certificate has never been revoked or surrendered.
The facts on which judgment was rendered at Special Term were undisputed. Such facts are as follows: Prior to the 24th day of January, 1936, the parties hereto, each engaged as manufacturer of power laundry machines, had certain disputes with each other as to the use of certain patents and out of such disputes arose much litigation, which litigation was pending on the 24th day of January, 1936. On such date in order to compromise and settle these disputes and litigation between these parties, they entered into an agreement for the termination of the litigation and the disputes and the claims and by such agreement established a plan of use by either party of certain of the patented machinery and for the payment of royalties under such use. Subsequent to the execution of the agreement and prior tc the arbitration proceedings which the court is now considering, certain amendments were made to such agreement. Each party was given access to the books of the other for the limited purpose of carrying out the agreement. Provision was made in the agreement of January 24, 1936, for arbitration of any controversies which might arise in the performance or interpretation of the agreement, and such agreement which was to be for the lifetime of a disputed Davis patent contained the following provisions for arbitration: ‘ ‘ 19. In the event of any difference or dispute or controversy .of any nature whatsoever in any way relating to the interpretation of any of the provisions or terms of this agreement or relating to the observance of performance by the parties or either of them, of any of the provisions or terms of this agreement or a claim or demand of either party hereunder, the parties hereto shall mutually endeavor to adjust the same and in the event of their failure to adjust and settle the same, then such difference, dispute or controversy shall be referred for arbitration. One arbitrator shall be selected by each party, such selection to be made voluntarily upon ten (10) *625 days written notice from the other. The arbitrators shall appoint an umpire. A. The party initiating the arbitration may elect to proceed either under the provisions of the Arbitration Law of the State of New York and of the Civil Practice Act of' the State of New York or under the arbitration laws of the State of Ohio by notifying the other party in writing of its election, and thereafter the arbitration shall proceed in accordance therewith and the laws of the state so selected shall be applicable and ' . shall be followed for the purpose of carrying into effect this agreement to settle by arbitration. B. In the case of arbitration and an award, the party against whom the award is made shall have ninety (90) days after said award becomes final in which to comply with the award of the arbitrators before the successful party can assert or claim a termination of this agreement.” Certain disputes having arisen as to the matters covered by the agreement of January 24, 1936, American Company made demand, in writing, on January 28,1943, on Prosperity Company as follows: “We take this opportunity to formally initiate arbitration proceedings pursuant to Paragraph 19 of the agreement of January 24, 1936, between the Prosperity Company, Inc. and American Laundry Machinery Company. The American Laundry Machinery Company elects to conduct such proceedings .under the arbitration laws of the State of Ohio, and this shall constitute notification in writing to you of such election under Section A of said Paragraph 19.” This letter of January 28, 1943, was received by Prosperity Company which made no direct reply thereto, although New York State counsel did acknowledge the receipt of the letter of January 28, 1943, and promised to bring the matter to the attention of proper officials of Prosperity Company; up to September 15, 1943, no further action was taken by Prosperity Company, and so on September 15,1943, by letter, the receipt of which by Prosperity Company is conceded, Ohio counsel for American Company wrote Prosperity Company as follows: “we must now insist that your company immediately designate its arbitrator so that American may select its arbitrator and the two choose the third. If this is not done within two weeks of this day, we shall assume that you do not propose to proceed under the contract and we shall then take proceedings as outlined under the statutes of Ohio, whereby the arbitrator will be selected by a court, and proceed with the arbitration.” No response was made by Prosperity Company to this communication of American Company’s counsel dated September 15, 1943. On November 15, 1943, in re the proceeding in the Court of Common Pleas, Ohio *626 counsel for American Company wrote Prosperity as follows: “ Dear Sirs: Enclosed you will find a copy of the ‘ Petition ’ for the appointment of an arbitrator which was filed today in the Court of Common Pleas. The Court has set the hearing for the 30th day of November before Judge Mack in Boom 9 at 10:00 A.M., at the Hamilton County, Ohio, Court House in Cincinnati.” The petition, a copy of which was enclosed in the letter of November 15,1943, prayed for the appointment of an arbitrator on behalf of Prosperity Company. The Court of Common Pleas of the State of Ohio is a court of general jurisdiction. Prosperity Company made no response to, or took any action in reference to, such petition and the letter of November 15, 1943. On November 30, 1943, a hearing ivas held on such petition before Judge Alfred Mack of that court. Intermediate the filing of the petition in the Court of Common Pleas and the granting of the same, Ohio counsel made a statement to Judge Mack as follows: “ The Prosperity Company, Inc. is contemplating employing them, but they are not authorized to and are not entering any appearance in this proceeding, and that ‘ there has been no proper service secured upon The Prosperity Company,.Inc.’ ” Subsequent to such statement, default Avas taken, and on such default Judge Mack wrote an opinion holding that the Court of Common Pleas had jurisdiction to appoint an arbitrator on behalf of Prosperity Company and the court did then appoint such an arbitrator. (27 Ohio Op. 393.) The arbitrator appointed by the court on behalf of Prosperity Company and the one appointed by American Company appointed a third arbitrator, and on June 27, 1944, by a letter sent to Prosperity Company the latter was advised that a hearing would be held in certain law offices in Cincinnati,. Ohio, by the arbitrators on July 14, 1944. This letter-notice was received by Prosperity Company on June 28, 1944, and Prosperity Company took no action thereon and made no reply thereto, and consequently defaulted in appearance at the hearing of July 14, 1944. Prior to the filing of the petition the parties had mutually endeavored to adjust the controversy between them but failed to adjust and settle the same. Hnder date of October 9, 1944, the three arbitrators handed down the opinion of the arbitration board, to the effect that Prosperity Company is indebted to American Company in the sum of $37,583.15, with certain interest thereon, and further providing that Prosperity Company should supply American Company Avith certain data as to the existence of any indebtedness from one party to the other from May 1,1943, through November 30, *627 1943. The amount awarded in that opinion covered the period L'rom January 1, 1942, through April 20, 1942, and interest, and the period from January 1, 1943, through April 30, 1943, and interest. It is these proceedings and the award of $37,583.15 which the Special Term of the Supreme Court of the State of New York has held void.
Solution of the controversy between the parties hereto and the outcome of this appeal rest on the decision as to whether or not the Ohio Court of Common Pleas had jurisdiction to appoint the arbitrator on behalf of Prosperity Company. Prosperity Company, so far as the record shows, at no time was within the physical jurisdiction of the courts of the State of Ohio and no provision of the law in that State gives extraterritorial validity io the process issued by its courts. Prosperity Company contends that it has never come under the jurisdiction of the Ohio courts and, therefore, the proceedings in arbitration are null and void. Whether or not Prosperity Company "was within the jurisdiction of the courts of Ohio and subject to the Ohio Arbitration Law depends on the construction of paragraph 19 of the arbitration portion of the agreement made between the parties hereto under date of January 24, 1936. It has been said “ The fundamental rule in the construction of all agreements is to ascertain the substantial intent of the parties * * *. The purpose to be accomplished and the object to be advanced may be considered * * *. If it is claimed by defendant that a construction should be placed on the contract other than has been indicated, or any doubt arises from the writing itself, the court must look into the intention of the parties to be derived not alone from the words used but it must be read, so far as they may be .ambiguous, in the light of the surrounding facts and circumstances * e (O’Neil Supply Co. v. Petroleum H. & P. Co.. 280 N. Y. 50, 55-56.) Consent to the jurisdiction of the courts of a foreign State or land may be derived from the consent of the parties in agreement and may be given to such jurisdiction at the time of the execution of the agreement by the terms of the agreement and prior to the arising of any issue brought about, by breach of the agreement. (Gilbert v. Burnstine, 255 N. Y. 348; Pohlers v. Exeter Manufacturing Co., 293 N. Y. 274; Wilson v. Seligman, 144 U. S. 41.) With these rules in mind, we turn to the agreement of the parties to ascertain their intent on this question and to the facts surrounding its execution. At the time of the making of the agreement, Prosperity Company had its residence in the State of New York and none in the State of Ohio, and .American *628 Company had its residence in the State o£ Ohio, and by the filing of its certificate to do business was subject to service of process in the State of New York. Prosperity Company was doing business in the State of New York and not in the State of Ohio. Paragraph 19 of the agreement, subdivision A, gave to the party claiming arbitration the election to proceed ‘ ‘ either under the provisions of the Arbitration Law of the State of New York and of the Civil Practice Act of the State of New York or under •the arbitration laws of the State of Ohio ”, and further provided that after the notice of the election “ the arbitration shall proceed in accordance therewith and the laws of the state so selected shall be applicable and shall be followed for the purpose of carrying into effect this agreement to settle by arbitration.” Here are two parties, each with a different State domicile, each foreseeing that at some time there could be the necessity for arbitration. Common sense does not follow an argument made by Prosperity Company that the parties did not necessarily intend to arbitrate either in Ohio or in New York; the application of the same common sense, in the use of reason, leads to the conclusion that either the State of Ohio or the State of New York was to be the situs of the arbitration proceedings and such situs was to be selected by the party seeking arbitration. In the matter before us, American Company selected the State of Ohio within the boundaries of which arbitration was to be held. Now comes Prosperity Company (plaintiff-respondent here) and says, in effect, that it cannot be brought within the State of Ohio except by the service of judicial process issued by the courts of Ohio, and yet at the time of the making of the contract Prosperity Company must have known that no judicial process of any effect could issue from the Ohio courts as against Prosperity Company. Does Prosperity Company imply that it intended to enter into an unenforcible contract? This cannot be so. It must be concluded that Prosperity Company, at the time of making the agreement, by such agreement, gave consent to being amenable, for the purposes of the agreement, to the jurisdiction of the State of Ohio and the courts of the State of Ohio when necessary to carry out the agreement. “ No other fair conclusion can be drawn from their language. * * * Contracts made by mature men who are not wards of the .court should, in the absence of potent objection, be enforced. Pretexts to evade them should not be sought. Pew arguments can exist based on reason or justice or common morality which can be invoked for the interference with the compulsory performance of agreements which have been freely made. Courts *629 should endeavor to keep the law at a grade at least as high as the standards of ordinary ethics.” (Gilbert v. Burnstine, 255 N. Y. 348, 354.)
By its agreement with American Company, Prosperity Company for the purposes of that agreement has placed itself in the position that at the election of American Company it is a party to such arbitration proceedings as are brought under the Arbitration Law of the State of Ohio. Except possibly in one respect, there is no question that these proceedings have been so brought and conducted. The one respect which requires discussion is that involved in the method by which the notice was given to Prosperity Company of the application or petition to the Court of Common Pleas of the State of Ohio for the appointment of Prosperity Company’s arbitrator "when Prosperity Company failed to appoint one. It is concerning the solution of this possible one exception that the controversy now before us largely depends, and it is concerning the same that the question of public policy has, in part, been raised at Special Term and before us by respondent Prosperity Company. In this connection, it is to be noted that the arbitration paragraph of the agreement, in part, provides “ the laws of the state so selected shall be applicable and shall be followed for the purpose of carrying into effect this agreement to settle by arbitration.” The Arbitration Law of the State of Ohio makes provision that when petition is addressed to the Ohio court for the appointment of an arbitrator, the application should be made as on motion practice in that State. (Ohio Arbitration Act, § 12148-1.) Such act is very similar to the New York State Arbitration Act as contained in article 84 of the Civil Practice Act of this State; and the provisions as to notice are similar to sections 1450 and 1452 of the New York State Civil Practice Act. Interesting as to the design of this section is the comment in Page’s Ohio General Code, Annotated (Yol. 9, § 12148-5, p. 448, Comment). “ This section is designed to provide the utmost speed in court procedure. Court applications under the act are heard and made as motions. ’ ’ The practice in Ohio on motions and in reference to the service of the notice thereof is contained in sections 11372, 11373 and 11374 of the Ohio General Code, and are to the effect that notice of motion should be served a reasonable time before the hearing and in writing by a sheriff, coroner or constable, or by a disinterested person. Proof of such service is to be afforded by the return of the officer or affidavit of the person. No such service was made in the proceedings before the Court of Common Pleas in this matter. Argument is made before this *630 court that to countenance the method of notice by mail, as used in the arbitration proceedings herein, would be against the public policy of this State. In order to determine this question, one must turn to a consideration of the object of these sections of the Code and Arbitration Act of Ohio. The object of any service is to make sure that a party is advised in opportune time and not in a surreptitious way of proceedings in court. Here it is conceded that the respondent Prosperity Company received notice by mail of the application. Under the provisions of the Ohio law there could be no other service because as has been indicated, Prosperity Company has never been within the State of Ohio, and the process of that State has no extraterritorial effect given it by its own statutes. Here we have a case where the respondent Prosperity Company has consented, by the terms of its agreement, to arbitrate in the State of Ohio; in all fairness and good morals no stumbling block should be raised either by the courts or by a party to the agreement to the 'carrying out of the agreement. Prosperity Company in making its agreement, as has been said above, must have known that it could not be reached by Ohio State process. The protection given by the Ohio Act and Code as to formal service is not needed to protect Prosperity Company; it concedes that it received written notice of the petition and of the arbitration hearings in time which must be said was ample «for it to appear or protect itself; therefore, even though the provisions for formal service do apply, ordinarily they cannot be said to apply as a bar to the carrying out of the agreement. “ Settlements of disputes by arbitration are no longer deemed contrary to our public policy. Indeed, our statute encourages them. * * * Contracts made by mature men who are not wards of the court should, in the absence of potent objection, be enforced. Pretexts to evade them should not be sought.” (Gilbert v. Burnstine, 255 N. Y. 348, 353-354.) To uphold the sufficiency of the notices given to Prosperity Company in the course of the proceedings in Ohio does but uphold our public policy in reference to inviolability of contracts, and therefore it must be said that in no respect does the method of notice herein violate any rights of the respondent Prosperity Company.
Attention is given now to another phase of the question of public policy which has been considered in connection with these proceedings. There is before this court the decision of the Court of Common Pleas of the State of Ohio, a court of competent general jurisdiction, and a decision from which no appeal has been taken in that State, unholding the validity of the appointment and the method of selecting the arbitrator on behalf of *631 Prosperity Company. (American Laundry Machinery Co. v. Prosperity Co., Inc., 27 Ohio Op. 393, the Ohio proceedings in this case.) Such decision of the Ohio court stands as the lav of that State and an exposition of the practice in arbitration matters; it could well be argued that this court is concluded by that decision unless it be shown that such decision is against the public policy of this State, and such violation of our public policy has not been shoivn to this court.
Cases and text writers have been cited on this appeal to this court. (Gilbert v. Burnstine, 255 N. Y. 348; Finsilver, Still & Moss v. Goldberg, M. & Co., 253 N. Y. 382; Matter of Marchant v. Mead-Morrison M. Co., 252 N. Y. 284; Matter of Heyman, Inc. v. Cole Company, 242 App. Div. 362; Skandinaviska Granit Aktiebolaget v. Weiss, 226 App. Div. 56; Kanter v. Bloom Co., Inc., 144 Misc. 602; Matter of United Artists Corporation v. Gottesman, 135 Misc. 92; Sargant v. Monroe, N. Y. L. J., February 1, 1944, p. 421, col. 7; Matter of Schmoll Fils Associated, Inc., N. Y. L. J., June 21, 1939, p. 2869, col. 6; Frey & Horgan Corp. v. Superior Court, 5 Cal. 2d 401; In re AmesFarmer Canning Co., 190 Iowa 1259; Phillips on Arbitration and Conflict of Laws, A Study of Benevolent Compulsion, 19 Corn. L. Q. 197 et seq.; 17 Corn. L. Q. 165 et seq.) Also cited and commented on by both parties hereto is Matter of Red Line Commercial Co. (Pastene Co.) (269 App. Div. 632), In connection with this citation#see- Blatter of Galhan Lobo Co. Importing & Exporting Assn., S. A. (Raytian Amer. Sugar Co., S. A.) (271 App. Div. 310 [First Dept.]). These cases so cited involve no facts similar to those contained herein, nor the questions exactly involved on this appeal, but a careful study of such citations shows that they do not contain anything contrary to the conclusions reached herein, that agreements of arbitration, like all other contracts, are considered inviolable by this State and that the public policy of the State approves of arbitration as a method of disposing of disputes in business matters in the most expeditious orderly manner. Appropriate to the questions here involved is the following from Carmody on New York Pleading and Practice (Vol. 10, § 1129): “ The provisions of the Arbitration Law, that the court, in the event of a lapse, may designate a third arbitrator or umpire, is binding in respect to contracts made in this state or in contemplation of its laws. It is then read into the contract as an implied term of the agreement.” Similar language can be used in reference to the Ohio Arbitration Act and the agreement before us.
*632 American Company, by filing its certificate to do business in this State, has made itself amenable to the proper orders and judgments of the courts of this State. Herein is sought by the respondent injunctive relief against the appellant solely for the purpose of preventing that appellant from proceeding on an award which is apparently valid in the State of Ohio and on which the appellant may or may not find it necessary to proceed in this State. If and when the appellant seeks to proceed further to carry into effect its award, it may be that the courts of the State of Ohio, or the courts of New York State, will be called upon to decide questions other than that on which relief has been sought here. This court holds herein that, so far as the proceedings in Ohio are concerned, the ground on which attack has been made and with the continuance of which restraint has been sought, the plaintiff-respondent is not entitled to relief. For these reasons the judgment of the Special Term should be reversed, with costs, the injunctions therein vacated, and the complaint dismissed, with costs.