**AMICIZIA SOCIETA NAVEGAZIONE,**
Petitioner-Appellee,

v.

**CHILEAN NITRATE AND IODINE SALES CORPORATION, Respondent-Appellant.**

No. 150, Docket 25847.

United States Court of Appeals Second Circuit.

Argued Jan. 14, 1960.

Decided Feb. 16, 1960.

C. Dickerman Williams, of Maclay, Morgan & Williams, New York City, for respondent-appellant.

John R. Sheneman, of Zock, Petrie, Sheneman & Reid, New York City (Anthony N. Zock and Francis J. O'Brien, of Zock, Petrie, Sheneman & Reid, New York City, on the brief), for petitioner-appellee.

Before CLARK, HINCKS, and WATERMAN, Circuit Judges.

CLARK, Circuit Judge.

This proceeding was instituted by petitioner's motion under 9 U.S.C. § 9 to confirm an arbitration award. Respondent filed a cross-motion under 9 U.S.C. §§ 10, 11, to vacate, modify, and correct the award. The court below granted the motion to confirm and denied the cross-motion, and respondent appeals.

On September 6, 1955, petitioner, as owner, and respondent, as charterer, executed two time-charter parties for vessels then under construction. The vessels were respectively delivered on December 27, 1956, and August 31, 1957, and currently remain in respondent's service under a five-year term. The dispute involves the vessels' rigging, i. e., booms and winches. Clause 29 of each charter party provided that hatches 2, 3, and 5 were to be "double-rigged." But at respondent's insistence the parties adopted Addendum No. 1, which provided that all six holds of each vessel were to be "double-rigged." The vessels were in fact equipped with two winches and two booms at each hold, which petitioner asserts constitute "double-rigging." Respondent's position is that the expression "double-rigged" means four winches and four booms at each hold.

Clause 17 of the charter parties is a provision for unrestricted arbitration thus:

"That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men."

Pursuant to this clause, the parties submitted the following question to arbitration: "Under the subject charter party, does hatch equipment, consisting of two winches and two booms, satisfy the charter party term that the hatch be 'doubled-rigged'?" If answered in the negative, damages were to be assessed by the arbitrators.

The arbitrators, by a vote of two to one, ruled in favor of petitioner. Relevant portions of the majority opinion read as follows:

"Based on testimony and the documents offered in evidence, it would appear both the owner and the charterer took for granted their individual opinion as to the requirement dealing with the number of winches and booms at a hatch and no attempt was made by either party to further clarify their understanding.

\* \* \* \* \* \*

"It is the opinion of [the majority that] the expression 'double-rigged' has two meanings in New York, which is obvious from the evidence presented.

"The facts indicate this expression was proposed and inserted in the charter party at the request of the charterer.

"Therefore, under the circumstances, we find in favor of the owner in Item #1 of the agreement covering the submission to arbitration and no damages are awarded to the charterer."

The dissenting opinion relied upon the course of negotiations between the parties in concluding that petitioner understood "double-rigged" to mean four winches and four booms. Petitioner had forwarded plans of a vessel showing two

winches and two booms at each hatch, but respondent had excepted in a counteroffer which specified that holds 2, 3, and 5 be "double-rigged."

■■ Were we empowered to view the matter *de novo,* we would find much to persuade in the arguments advanced by the dissenting arbitrator. But as respondent recognizes, the court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i. e., avoidance of litigation, would be frustrated. See Note, Judicial Review of Arbitration Awards on the Merits, 63 Harv.L.Rev. 681 (1950). The statutory provisions, 9 U.S.C. §§ 10, 11, in expressly stating certain grounds for either vacating an award or modifying or correcting it, do not authorize its setting aside on the grounds of erroneous finding of fact or of misinterpretation of law. It is true that an award may be vacated where the arbitrators have "exceeded their powers." 9 U.S.C. § 10(d). Apparently relying upon this phrase, the Supreme Court in Wilko v. Swan, 346 U.S. 427, 436–437, 74 S.Ct. 182, 98 L.Ed. 168, suggested that an award may be vacated if in "manifest disregard" of the law. But cf. Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 203 note 4, 76 S.Ct. 273, 276, 100 L.Ed. 199: "Whether the arbitrators misconstrued a contract is not open to judicial review," citing The Hartbridge, 2 Cir., 62 F.2d 72, certiorari denied Munson Steamship Line v. North of England Steamship Co., 288 U.S. 601, 53 S.Ct. 320, 77 L.Ed. 977. See also Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004; James Richardson & Sons v. W. E. Hedger Transp. Corp., 2 Cir., 98 F.2d 55, certiorari denied W. E. Hedger Transp. Corp. v. James Richardson & Sons, 305 U.S. 657, 59 S.Ct. 357, 83 L. Ed. 426.

■ Respondent contends that the arbitrators' reliance upon the principle that ambiguous language is to be construed against the author constitutes a "manifest disregard" of the law, since petitioner had reason to know the meaning respondent gave to the expression "double-rigged." But if labels are to be applied to the issues involved, we deem the question of what each party had reason to know to be one of fact. Further, an examination of the arbitrators' opinion has not disclosed to us any finding as to what the parties had reason to know, as opposed to what they did in fact understand. While the evidence perhaps does suggest that petitioner had notice of respondent's meaning, the arbitrators may have been of the view that respondent, which proposed the term, had reason to know of the ambiguity. Or, as appears quite likely, the issue may not have been considered. But in any event, the misapplication—if it be that—of such rules of contract interpretation does not rise to the stature of a "manifest disregard" of law.

As an alternative defense, respondent contends that the charter parties are void for want of a meeting of the minds as to the meaning of "double-rigged," under the doctrine of the well-known case, Raffles v. Wichelhaus, 2 H. & C. 906, 159 Eng.Rep. 375 (Ex.1864). Although this contention was not raised during arbitration, it is asserted that an issue as to the existence of a contract is one for *de novo* determination by the court. Reliance is placed upon the opinion of Chief Judge Cardozo in Finsilver, Still & Moss, Inc. v. Goldberg, Maas & Co., 253 N.Y. 382, 391, 171 N.E. 579, 582, 69 A.L.R. 809, and the rationale that "[i]n the absence of a contract expressing a consent to arbitrate, an award by an arbitrator is an act of usurpation."

■ The recent decision by this court in Robert Lawrence Co. v. Devonshire Fabrics, Inc., 2 Cir., 271 F.2d 402, is, however, dispositive of the issue herein raised. There it was claimed that a purchase agreement containing an arbitration clause had been fraudulently induced. This court construed the Arbitration Act as envisaging the arbitration clause as a separable part of the

contract and concluded that the alleged fraud had not affected the arbitration provision. It was further determined that the arbitration clause was broad enough to encompass a charge of fraud in the inducement. Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, was distinguished as involving a question of an agent's authority to contract. If the agent had no authority to execute the charter party, it likewise had no authority to bind its alleged principal to the arbitration clause. But in the present case there is no contention of lack of a meeting of the minds in respect to the arbitration clause. Since this clause is separable and provides for unrestricted submission, the question of a meeting of the minds as to "double-rigging" is within the province of arbitration.

 In addition, the parties herein have voluntarily submitted their dispute to arbitration, thus evincing a subsequent agreement for private settlement which would cure any defect in the arbitration clause. Since Clause 17 of the charter parties is referred to in the submission, the arbitrators would thereby be invested, through incorporation by reference, with the same breadth of authority as under the clause itself. This possibility was recognized in the Finsilver case, supra, 253 N.Y. 382, 391, 171 N.E. 579, 582, 69 A.L.R. 809, where Chief Judge Cardozo stated: "We assume that circumstances may exist in which a party to an arbitration, joining in its proceedings without protest or disclaimer, may be found to have joined by implication in the appointment of the arbitrators, and to have confirmed their jurisdiction, if otherwise defective."

The court below held that respondent had waived any right to rescission by failure to object to the rigging actually furnished until May 10, 1957, over four months after delivery of the first vessel. Grymes v. Sanders, 93 U.S. 55, 23 L.Ed. 798, was cited in support of this decision. Respondent asserts that it complained promptly after actual discovery of the defect, and cites Pence v. Lang-

don, 99 U.S. 578, 25 L.Ed. 420. While this issue is not free from doubt, it is rendered moot by the position we adopt.

Order affirmed.