Froessel, J. (concurring).
I am in agreement with the majority that there should be an affirmance here. I do not agree, however, with their reasoning that it was error for the Appellate Division to pass on the question of the alleged lack of mutuality of the contract or its illusory nature. The notice of *338 motion for a stay was made upon the ground that the contract “ is void and unenforceable on its face ”. Should there in fact be an absence of mutuality of obligation, or illusoriness—‘Which in essence means an absence of consideration—‘the purported contract would be invalid and unenforcible, as petitioner contends (Schlegel Mfg. Co. v. Cooper’s Glue Factory, 231 N. Y. 459; Bintz v. City of Hornell, 268 App. Div. 742, 747, affd. 295 N. Y. 628; 1 Corbin, Contracts, §§ 152, 145). In that case, as Professor Corbin puts it, no “ contract was made ” (p. 499) — it never came into existence. Determination of that issue, under well-established principles, is a threshold matter for determination by the court.
The rule is succinctly stated in Matter of Kramer & Uchitelle (Eddington Fabrics Corp.) (288 N. Y. 467, 471) as follows: “ Arbitration clauses in contracts such as those under consideration are directed solely to the remedy—not to the validity or existence of the contract itself. Thus, proceedings to enforce arbitration under article 84 of the Civil Practice Act presuppose the existence of a valid and enforceable contract at the time the remedy is sought. (Matter of Berkovitz v. Arbib & Houlberg, Inc., 230 N. Y. 261, 271; Mulji v. Cheong Yue Steamship Co., Ltd. [1926], A. C. 497.) Seasonable challenge may be made to the court to the existence of such a contract by one who stays out of the arbitration and * * * the issue is properly determinable by the court as matter of law. (Matter of Finsilver, Still & Moss, Inc. v. Goldberg, Maas & Co., 253 N. Y. 382.) ” (Emphasis supplied.)
In Matter of Lipman (Haeuser Shellac Co.) (289 N. Y. 76) we acknowledged that the issue of ‘1 whether the contract never came into existence ” is for the court (id., at p. 79); and in Matter of Sarle (Sperry Gyroscope Co.) (4 A D 2d 638, affd. 4 N Y 2d 917) the distinction between questions of “ performance under the contract ” and “ the contract itself” was stressed (4 A D 2d, at p. 640), the former being for the arbitrators and the latter for the court (see, also, Matter of Wrap-Vertiser Corp. [Plotnick], 3 N Y 2d 17, 20, 22).
The logic of this rule is forcefully stated in Matter of Finsilver, Still & Moss v. Goldberg, Maas & Co. (253 N. Y. 382) where Chief Judge Cabdozo, writing for a unanimous court, said (pp. 390-391): “ If in truth there is no contract at all or *339 none calling for arbitration, the self-constituted tribunal is a nullity, without power to bind or loose by force of its decision. * * * In the absence of a contract expressing a consent to arbitrate, an award by an arbitrator is an act of usurpation.” (Emphasis supplied.)
Simply put, the legal existence of the arbitral tribunal depends on contract. It is from that agreement between the parties that their very being, or jurisdiction and power to act, derives. Unless such contract, when seasonably challenged, is declared valid and enforcible, therefore, the arbitral tribunal can never legally come into being. As the court stated in Matter of Gruen v. Carter (173 Misc. 765, 766, affd. 259 App. Div. 712, motion for rearg. den. 259 App. Div. 813), “ It is not for the arbitrators to decide upon the validity of the very agreement upon which their own status as arbitrators is predicated ”; or, as Judge Burke well put it in Matter of Wrap-Vertiser Carp. (Plotnick) (3 N Y 2d 17, 22, supra), ‘‘' Obviously, parties cannot agree, in an invalid contract, to arbitrate the validity of the contract.’ ” *
The majority in this case, without purporting to overrule these well-established principles and their underlying logic, state the applicable rule to be that, ‘ ‘ where parties enter into an agreement and, in one of its provisions, promise that any dispute arising out of or in connection with it shall be settled by arbitration, any controversy which arises between them and is within the compass of the provision, must go to arbitration ’ ’. This statement of the allegedly established law in this State contains its own refutation. If it has not been determined whether “ an agreement ” was entered into, what basis is there for the existence of the arbitrators and their jurisdiction in the matter? Again, if mutuality of obligation is lacking, there is no agreement— or, as Chief Judge Cardozo stated in Finsilver {supra), “ no contract at all ” — and the existence of such an agreement when seasonably challenged must be determined preliminarily by a court of law in order to legally constitute the arbitral tribunal, and afford them jurisdiction over the controversy between the parties arising out of the agreement.
*340 Conceivably, the only rationale which can justify the position of the majority is that the arbitration clause is an agreement separate and apart from the main agreement, supported by its own consideration. But the majority does not proceed on that basis. They recognize — as our decisions from Finsilver through Matter of Sarle {supra) clearly demonstrate — that in this jurisdiction the promise to arbitrate is considered to be but a clause or part of the over-all contract, for they state there is “ an agreement ”, and “ one of its provisions ” (emphasis supplied) contains a “ promise ” to arbitrate. Consequently, if the over-all contract is lacking in consideration—i.e., illusory or lacking in mutuality—or is otherwise invalid, it is unenforcible, and the right to arbitrate, which is a part of it and contingent thereon, falls. Unless we determine this preliminarily as a matter of law, the jurisdiction of the arbitrators has not been established. If there be no contract, they are a “ self-constituted ” “nullity ”.
It is no answer, as the majority state, that, since “ the question whether the contract lacked mutuality of obligation ” depends “ primarily on a reading and construction of the agreement ” and involves “ substantial difficulties of interpretation ”, a basis for arbitration has been established. It is rather our function to resolve these questions since they bear on the validity, enforcibility and existence of the contract, upon which the right to arbitrate and the jurisdiction of the arbitrators in turn depend. If no agreement conferring that right and jurisdiction exists, there is nothing for the arbitrators to read and construe; and the happenstance that the question may be difficult does not permit us to pass the problem on to the arbitral tribunal—which as yet has no legal being.
Inasmuch as I am in agreement with the majority of the Appellate Division that the contract here at issue is not lacking in mutuality of obligation, the arbitrators may be properly constituted and adjudicate the controversies between the parties arising out of the agreement, and on that basis I would affirm.

 The majority did not disagree with this premise in the Wrap-Vertiser case. Judge Vax Voorhis there stated: “Even if he had rescinded or asked for rescission, such an issue would have had to have heen decided in court before it could be known that an agreement existed supplying a foundation for the jurisdiction of the arbitrators” (p. 20; italics supplied).