Samuel **LEVY, Alice Rimoch, Ricardo Fis and Alberto Fis, Plaintiffs,**

v.

**SHEARSON LEHMAN HUTTON, INC., Gilla Altman and Samir Nasr, Defendants.**

No. 89 Civ. 1227 (WK).

United States District Court,
S.D. New York.

July 28, 1993.

David M. Levy, Kraver & Ley, New York City, for defendant Gilla Altman.

James T. Meyer, Law Offices of Mark J. Alonso, New York City, for defendant Shearson Lehman Hutton.

## OPINION AND ORDER

WHITMAN KNAPP, SENIOR District Judge.

On Feb. 21, 1989, Plaintiffs, Samuel Levy, Alice Rimoch, Ricardo Fis and Alberto Fis commenced this civil action against Shearson Lehman Hutton ("Shearson") on *respondeat superior* grounds and against two of its employees, defendants Gilla Altman and Samir Nasr, for their alleged misfeasance. The complaint alleged that Altman and Nasr engaged in unauthorized trading in plaintiffs' commodities accounts, undertaking a large number of high risk currency transactions in order to generate excess commissions—that is, "churning"—without disclosing the huge losses thereby suffered. It also alleged that Altman breached her fiduciary duty by transferring unprofitable trades into plaintiffs' accounts and transferring profitable trades into her own account. Finally, plaintiffs alleged that Shearson wilfully or recklessly failed to supervise and control Altman and Nasr, and provided them with the means and facilities to engage in this improper conduct.

After a limited document production and the completion of the first two sessions of Altman's deposition, Shearson settled with plaintiffs for $2.5 million, a dollar-for-dollar payment of all trading losses alleged to have been suffered during the contested three-month period. Shortly thereafter, another Shearson customer, Stephan Baloga, commenced an arbitration proceeding against Shearson and Altman before a panel of arbitrators of the New York Stock Exchange, which Shearson, without interviewing Altman to determine her version of the facts, settled for the entire $210,000 demanded.

Thereafter, Shearson initiated an arbitration proceeding against Altman and Nasr seeking contribution for the total of both settlements on the ground that Altman and Nasr were entirely at fault.[1] The arbitration

---

1. Nasr's present whereabouts are unknown, and he neither participated in the arbitration, nor took part in the motion to vacate the arbitration

was a painfully drawn-out affair involving 29 hearings over the course of a year. These hearings resulted in over 2500 pages of testimony and 69 exhibits, and included evidence pertinent to the essential question of the unauthorized nature of the trading, as well as a vast amount of entirely irrelevant testimony, hearsay, and documents related to Altman's counterclaims [2] or to nothing at all. The arbitrators awarded Shearson $2.71 million, and it now moves to confirm that award; Altman urges that §§ 10(c) and (d) of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., (the "Act") requires that we vacate it.

The Act and related case law establish a "federal policy favoring arbitration" (*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1982) 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765) if a ground for the arbitrator's decision can be inferred from the facts of the case (*Sobel v. Hertz, Warner & Co.* (2nd Cir.1972) 469 F.2d 1211, 1216). The Second Circuit has observed that "the court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated" (*Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.*, (2d. Cir.1960) 274 F.2d 805, 808).

However, an arbitration award can be vacated pursuant to § 10(a) of the Act for, *inter alia*, the following reasons: (1) the award was procured by corruption or fraud (2) there was evident partiality or corruption by the arbitrators (3) the arbitrators were guilty of misconduct in a way which prejudiced the rights of a party, or they refused to consider the relevant evidence; or (4) the arbitrators failed to exercise their powers properly. In addition, if the arbitrators acted in manifest disregard of law or if the award is incomplete, ambiguous or contradictory the court may vacate it.

While material was presented to the arbitration panel that allows us to infer a basis for the arbitrators' decision we are concerned about the huge mass of irrelevant and preju-

dicial testimony that was wholly unrelated to the single pivotal issue of whether Altman engaged in unauthorized trading. Indeed, the documentary and other evidence relevant to the allegation of churning—that is, that the trading was indeed unauthorized—could have been submitted to the panel in a single, probably brief, session.

It is impossible to imagine that the panel was not swayed by this avalanche of irrelevant and prejudicial evidence and innuendo, which appears to have been submitted with the sole purpose of persuading the panel that Altman was a bad person. However, we have found no case vacating an award based on a concern that the arbitrators may well have missed the forest for the trees; nor does § 10 or any other recognized exception seem to us to permit vacation of an award on this ground. Thus, in the face of such a dearth of authority, we are constrained to confirm the arbitration award.

Accordingly, we grant plaintiff's motion to confirm the arbitration panel's award.

SO ORDERED.

---

award. Thus we will hereafter refer only to Altman.

**2.** Altman does not dispute the arbitrator's denial of her counterclaims, so they are not here at issue.