847 F.2d 475
 ARNULFO P. SULIT, INC.; Arnulfo P. Sulit, M.D., Inc., Money
Purchase Pension Plan; Arnulfo P. Sulit, M.D.,
Inc. Profit Sharing Plan; and Arnulfo
P. Sulit, M.D., Appellees,
v.
DEAN WITTER REYNOLDS, INC., Appellant.
Bernardino R. Manalo.
 No. 86-1546.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1987.
Decided May 23, 1988.
 
 Reggie C. Giffin, Kansas City, Mo., for appellant.
 Linda S. Dickens, Kansas City, Mo., for appellees.
 Before FAGG and BOWMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.
 FAGG, Circuit Judge.
 
 
 1
 Dean Witter Reynolds, Inc. (Dean Witter) appeals from adverse rulings on its motion to compel arbitration and stay proceedings in an action brought by a Dean Witter customer, Arnulfo P. Sulit, M.D., his professional corporation, and his employee benefit plans (collectively Sulit). Sulit's complaint asserted Dean Witter through its broker, Bernardino R. Manalo, mismanaged Sulit investment accounts in violation of state and federal law, including the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1109.
 
 
 2
 In support of its motion to compel arbitration and stay proceedings, Dean Witter contended Sulit's pension and profit sharing accounts were the subject of agreements to arbitrate and that arbitration of Sulit's claims arising from the management of these accounts was required by the Federal Arbitration Act (the Arbitration Act). See 9 U.S.C. Secs. 1-14. The district court concluded Sulit's pension account was not covered by an arbitration agreement. The district court also held Sulit was entitled to litigate ERISA claims relating to Sulit's profit sharing account in federal court despite the existence of agreements requiring arbitration of those claims. We reverse.
 
 
 3
 Initially, we note Sulit filed a motion to dismiss this appeal for lack of appellate jurisdiction, claiming the district court's decision was not a final order and did not meet the requirements for interlocutory appeal under 28 U.S.C. Sec. 1292(a)(1). This court has denied Sulit's motion. See Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc., No. 86-1546 (8th Cir. Dec. 12, 1986) (unpublished order). Having determined we have jurisdiction, we now turn to the issues raised by the parties in their briefs.
 
 I.
 
 4
 Sulit had separate accounts with Dean Witter for pension and profit sharing investments. Sulit signed two agreements that permitted Dean Witter to trade options on Sulit's behalf. These options trading agreements both provided that: "[a]ny controversy between us arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration." App. at 60. The parties agree one of the options agreements, and the arbitration provision it contains, applies to Sulit's profit sharing account. The applicability of the other options agreement to the pension account is in dispute.
 
 
 5
 The options agreement in question correctly identifies the account number assigned to the pension account, but shows the account's written title as "Arnulfo P. Sulit M.D. Inc. TTEE F/B/O Arnulfo P. Sulit M.D." Id. at 61. This written title corresponds with the correct full title of the pension account except for the omission of the words "Pension Plan Account." Dean Witter contends this agreement by virtue of the corresponding numerical account number clearly covers disputes in the pension account. The district court held the agreement was ambiguous and concluded Dean Witter had failed to offer sufficient proof of an arbitration agreement covering the pension account. We disagree.
 
 
 6
 Whether the options agreement is ambiguous is a question of law that we review de novo. See Lehman Bros. Kuhn Loeb, Inc. v. Clark Oil & Refining Corp., 739 F.2d 1313, 1317 (8th Cir.1984) (en banc), cert. denied, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); Press Mach. Corp. v. Smith R.P.M. Corp., 727 F.2d 781, 784 (8th Cir.1984). The agreement in dispute unmistakably lists the pension account number in what the parties agree to be its correct numerical form. Any lack of completeness or internal consistency is easily resolved by reference to the account number, which also matches the pension account number contained in related documents prepared when the account was opened. We are satisfied no ambiguity exists, and we conclude Dean Witter has shown a valid agreement to arbitrate that extends to disputes over the pension account.
 
 II.
 
 7
 We now consider whether Sulit can litigate ERISA claims relating to the pension and profit sharing accounts in federal court despite the fact Sulit signed agreements requiring arbitration of those claims.
 
 
 8
 To support the district court's ruling denying arbitration, Sulit argues on appeal that ERISA contains a "no-waiver" provision prohibiting enforcement of agreements that relinquish the access to the federal judicial forum provided in the statute. See 29 U.S.C. Sec. 1110(a). Sulit also argues ERISA claims are not amenable to the arbitral forum because they are "purely statutory," require interpretation of a complex statutory scheme, and are generally beyond an arbitrator's competence.
 
 
 9
 Sulit also argued in the district court that under various contract principles the parties had not entered into enforceable agreements to arbitrate ERISA disputes. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (Mitsubishi ) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). The district court, however, held in favor of Dean Witter on the contract law issues. Because Sulit took no cross-appeal from that ruling, we will not consider Sulit's unappealed contentions for reversal on this point. See Freeman v. B & B Assocs., 790 F.2d 145, 151 (D.C. Cir.1986).
 
 
 10
 Sulit's argument that ERISA prohibits enforcement of the parties' agreements to arbitrate Sulit's ERISA claims under the pension and profit sharing accounts requires us to consider the effect of 29 U.S.C. Sec. 1110(a), which provides:
 
 
 11
 Except as provided in sections 1105(b)(1) and 1105(d) of this title, any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.
 
 
 12
 29 U.S.C. Sec. 1110(a).
 
 
 13
 The district court's conclusion that Sulit's agreements to arbitrate ERISA claims are unenforceable under section 1110(a) must be reviewed with guidance from Shearson/American Express, Inc. v. McMahon, --- U.S. ----, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (Shearson ). In Shearson, id. 107 S.Ct. at 2343, the United States Supreme Court held a similar customer agreement did not impermissibly waive compliance with the Securities Exchange Act of 1934 (the Exchange Act), 15 U.S.C. Secs. 78a-78kk, and thus did not violate 15 U.S.C. Sec. 78cc(a). This holding undercuts Sulit's and the district court's reliance on Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), to that extent. See Shearson, 107 S.Ct. at 2338-43; see also Nesslage v. York Securities, Inc., 823 F.2d 231, 234-35 (8th Cir.1987). We recognize Shearson is not an ERISA-based case. Even so, following the Court's analytical approach to agreements providing for arbitration of statutory claims, we believe the parties' agreements to arbitrate ERISA claims are " 'enforce[able] * * * in accord with the explicit provisions of the Arbitration Act.' " Shearson, 107 S.Ct. at 2343 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 520, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974)).
 
 
 14
 The Supreme Court in Shearson held customer-broker agreements to arbitrate Exchange Act claims as well as claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-1968, are enforceable under the terms of the Arbitration Act. See Shearson, 107 S.Ct. at 2343, 2346. The Court has also permitted the enforcement of agreements to arbitrate antitrust claims in the international business context, see Mitsubishi, 473 U.S. at 629, 105 S.Ct. at 3355, and pendant state law claims, see Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).
 
 
 15
 Under the analysis in Shearson, the Arbitration Act of its own force dictates enforcement of Sulit's agreement to arbitrate ERISA claims unless Sulit satisfies the burden placed on him as the party opposing arbitration to show "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Shearson, 107 S.Ct. at 2337. We may deduce this intent from: (1) the text of the statute; (2) the statute's legislative history; or (3) the "inherent conflict between arbitration and the statute's underlying purposes." Id.
 
 
 16
 Sulit contends congressional intent to require a judicial forum for the resolution of ERISA claims is shown by the text of section 1110(a). According to Sulit, an agreement to arbitrate ERISA claims instead of taking them to federal court is unenforceable because it effectively "relieve[s] a fiduciary from responsibility or liability" under the statute. See 29 U.S.C. Sec. 1110(a). We disagree.
 
 
 17
 A plain reading of the text of the statute refutes Sulit's argument. Section 1110(a), which forbids waiver of obligations "under this part," id., is contained in part 4 of subtitle B of ERISA. The ERISA civil enforcement provisions, and in particular the availability of federal court jurisdiction, are separately set out in part 5 of subtitle B of the statute. See id. Sec. 1132(a), (e). Section 1132(e), unlike sections in part 4 of subtitle B of the statute, does not impose any substantive duties or liabilities on ERISA fiduciaries. See, e.g., id. Secs. 1104-1109.
 
 
 18
 Under this statutory structure, an agreement to waive the judicial forum allowed for in section 1132(e) in favor of arbitration does not carry with it the waiver of any substantive duties or liabilities, and thus, no fiduciary has been impermissibly relieved of any "responsibility, obligation, or duty" imposed by part 4. See id. Sec. 1110(a); cf. Shearson, 107 S.Ct. at 2338. An agreement of that type " 'only submits [the ERISA claims] to * * * resolution in an arbitral, rather than a judicial, forum.' " Shearson, 107 S.Ct. at 2339 (quoting Mitsubishi, 473 U.S. at 628, 105 S.Ct. at 3355.) We find nothing in the text of section 1110(a), on which Sulit relies, demonstrating Congress intended to prohibit arbitration of ERISA claims.
 
 
 19
 Although Sulit does not rely on any part of the ERISA legislative history to support the district court's decision, our examination reveals no congressional intent to single out ERISA claims for exemption from the general federal policy favoring rigorous enforcement of agreements to arbitrate recognized in Shearson, see id. 107 S.Ct. at 2337. See generally H.R. Rep. Nos. 533 & 807, H.R. Conf. Rep. No. 1280, 93d Cong., 1st & 2d Sess. 1-46, 1-172, 1-387, reprinted in 1974 U.S. Code Cong. & Admin.News 4639, 4639-70, 4670-4837, 5038-5190; S. Rep. Nos. 127 & 383, 93d Cong., 1st Sess. 1-79, 1-157, reprinted in 1974 U.S. Code Cong. & Admin. News 4639, 4838-89, 4890-5037; S. Conf.Rep. No. 1090, 93d Cong., 2d Sess. 1-387. It is not, as Sulit argues, merely a matter of whether Congress intended to regulate the area of employee pensions or generally to provide access to the federal courts. Rather, the question we must answer is whether Congress also intended affirmatively to prevent waiver of the judicial forum for ERISA dispute resolution.
 
 
 20
 We are not persuaded this intent is demonstrated by the determination of Congress to allow ERISA plaintiffs ready access to the federal courts if they choose to sue. See 29 U.S.C. Sec. 1001(b). We find no hint in the legislative history of a "contrary congressional command," Shearson, 107 S.Ct. at 2337, expressing the intent that by permitting a federal judicial forum Congress also intended to override the Arbitration Act's aim of ensuring the enforcement of privately made agreements in which parties like Sulit have chosen to forego an available judicial forum in favor of arbitration.
 
 
 21
 Finally, we perceive no inherent conflict between arbitration of ERISA claims and the statute's purposes that would undermine the suitability of arbitration as a means of enforcing ERISA rights. We have no argument with the district court's observation that the ERISA statutory scheme is "designed to prevent fraud and overreaching in transactions [in which] one party is typically much less sophisticated." Addendum to Appellant's Brief at 9; see also 29 U.S.C. Sec. 1001(b). Even so, as "long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Mitsubishi, 473 U.S. at 637, 105 S.Ct. at 3360.
 
 
 22
 The district court suggested in its order the unsuitability of arbitration for resolving ERISA disputes lies in the adeptness of arbitrators at interpreting contractual as opposed to statutory claims and in the limited judicial review accorded arbitrators' decisions. Each of these considerations as well as Sulit's arguments, supra at 477, was considered in Shearson and rejected as an insufficient basis for concluding arbitration is inadequate to protect the substantive rights at issue and thus void a predispute waiver of access to a judicial forum. See Shearson, 107 S.Ct. at 2339-41. We arrive at the same conclusion in Sulit's case.
 
 
 23
 We do not find either in the purposes of the statute or in Shearson a compelling basis to treat agreements to arbitrate ERISA claims differently from those cases in which the Supreme Court has enforced agreements made between private parties to arbitrate antitrust, Exchange Act, and RICO claims. Like other essentially fact-based claims for fiduciary mismanagement, we believe arbitrators "are readily capable of handling the factual and legal complexities" of ERISA claims, see id. at 2340, and that those claims are not by their nature beyond the ken of arbitrators.
 
 III.
 
 24
 In sum, we conclude the parties have entered into arbitration agreements that apply to disputes over Sulit's pension and profit sharing accounts. We also conclude 29 U.S.C. Sec. 1110(a) does not bar enforcement of agreements that otherwise require arbitration of Sulit's ERISA claims.
 
 
 25
 For these reasons, we reverse and remand to the district court for entry of orders for arbitration consistent with this opinion.
 
 
 26
 FLOYD R. GIBSON, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 27
 I concur in Part II of the majority opinion because I agree that no ambiguity exists in the options agreement. In regard to Part III, however, I respectfully dissent.
 
 
 28
 I question whether the adhesion contract in this case should be enforced to deprive Sulit of his day in federal court. ERISA is premised on a fiduciary relationship between the parties. Implicit in that relationship should be the right of the aggrieved party to select a forum for resolution of the dispute. Enforcement of boilerplate arbitration clauses can only weaken the fiduciary relationship.