The **PERUVIAN CONNECTION, LTD.,** Plaintiff,

v.

R. Scott **CHRISTIAN,** Defendant.

Civil Action No. 97–2242–EEO.

United States District Court,
D. Kansas.

Aug. 29, 1997.

Elizabeth Drill Nay, Douglas C. McKenna, Lewis, Rice & Fingersh, L.C., Kansas City, MO, for Plaintiff.

Stacy M. Andreas, Amy B. Marcus, Lathrop & Gage, L.C., Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the application of defendant R. Scott Christian to stay proceedings until completion of pending arbitration (Doc. # 8). Plaintiff Peruvian Connection ("PC") has responded and opposes the motion. Defendant has filed a reply. In addition, Christian has, by separate motion, requested the court to extend the deadline to answer or otherwise respond to the complaint until twenty days after the stay is terminated or denied (Doc. # 6). The court has carefully reviewed the parties' briefing, exhibits, and the applicable law, and is now prepared to rule. For the reasons stated below, the motions are granted.

### I. Factual Background.

From September 1993 until August 1996, Christian was Chief Operating Officer of PC, a private, closely-held corporation engaged in the business of selling imported knitwear through mail-order catalogues and outlets. PC is controlled by Anne G. Hurlbut and her mother, M.L.M. "Biddie" Hurlbut (collectively "the Hurlbuts"), who hold the positions of Chief Executive officer and Chairman of the Board, respectively. On July 16, 1996, Christian received a "Notice of Termination Under the Employment Contract." The Notice stated that Christian's employment with PC was being terminated "without cause" pursuant to Section 6(b)(i) of the Employment Agreement. The Notice also stated that "in accordance with Section 3 of the September 3, 1993 Phantom Stock Agreement between you and the Company ('PSAR'), any rights that you hold under the PSAR will be forfeited upon your termination of employment." On the same day that PC gave notice it was terminating his employment agreement, PC offered to hire Christian as Chief Operating Officer at an increased salary but without the PSAR agreement. Christian declined the offer.

Both the employment agreement and the PSAR Agreement contained an identical arbitration provision, as follows:

Disputes under the Agreement shall be settled pursuant to binding arbitration be-

fore an arbitrator in the States of either Kansas or Missouri, in accordance with the voluntary labor arbitration rules of the American Arbitration Association, as then in effect. The arbitrator's sole authority shall be to interpret and apply the provisions of this Agreement, the arbitrator shall not change, add to, or subtract from, any of the provisions of the Agreement. The arbitrator shall have the power to compel attendance of witnesses at the hearing. Any court having jurisdiction over this matter may enter a judgment based upon such arbitration.

PC's Complaint for Declaratory Judgment, Ex. B § 17; Ex. C ¶ 11.

On February 13, 1997, Christian initiated arbitration proceedings against PC by filing with the American Arbitration Association ("AAA") a demand for arbitration addressed to PC and its owners. In the demand for arbitration, Christian asserted claims for (1) violation of § 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140; (2) wrongful termination; (3) breach of implied covenant of good faith and fair dealing; (4) quantum meruit; and (5) violation of Kansas Statutes Annotated § 17–1264(a). On March 31, 1997, in response to Christian's demand for arbitration, PC submitted to AAA an answering statement and a counterclaim for accounting. PC's answering statement contains the sentence: "The PSAR agreement does not constitute an employee benefit plan governed by ERISA 29 U.S.C. §§ 1001, *et seq.*" Neither the answering statement nor the counterclaim contain any allegation challenging the arbitrability of the ERISA claim or any other claim raised by Christian. On April 8, 1997, Christian filed with AAA a reply to the counterclaim.

On May 15, 1997, PC filed suit in this court seeking a declaratory judgment that its actions do not expose it to liability under ERISA, 29 U.S.C. § 1001, *et seq.* PC contends that the agreement under which Christian was to receive phantom stock appreciation rights (the "PSAR Agreement") is not an ERISA plan.

## II. *Standards for Arbitration.*

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, "evinces a strong federal policy in favor of arbitration." *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir.1995) (citing *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987)). The purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). "If a contract contains an arbitration clause, a presumption of arbitrability arises." *ARW,* 45 F.3d at 1462 (citing *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)). This presumption may be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* All doubts should be resolved in favor of coverage. *Id.* As the Supreme Court stated in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983):

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*See also Esposito v. Hyer, Bikson & Hinsen, Inc.,* 709 F.Supp. 1020, 1022 (D.Kan.1988) (quoting *Moses H. Cone,* and noting that the Supreme Court has given its "stamp of approval" to the principle that arbitration provisions are to be construed broadly to effectuate the strong federal policy evidenced by the Federal Arbitration Act). Courts are to "rigorously" enforce agreements to arbitrate. *ARW* 45 F.3d at 1462 (citing *McMahon,* 482 U.S. at 226, 107 S.Ct. at 2337).

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any

issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Although the Supreme Court has not directly addressed the issue of enforceability of predispute arbitration agreements in the context of ERISA-based claims, in a series of four cases, the Supreme Court has upheld the enforceability of predispute arbitration agreements under the FAA in connection with various other statutory claims. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (claim under Age Discrimination in Employment Act); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (claims arising under the Securities Act of 1933); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (claim under § 10(b) of the Securities Exchange Act of 1934 and claim under civil provisions of Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors Corp., v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (claim brought under the Sherman Antitrust Act).

In each of these cases, the Supreme Court determined that the FAA was enacted to reverse the longstanding judicial hostility toward arbitration agreements and to place such agreements on the same footing with other contracts. These cases also recognized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652 (citing *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354). Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or ex-

cessive economic power that "would provide grounds 'for the revocation of any contract,'" *Mitsubishi*, 473 U.S. at 627, 105 S.Ct. at 3354 the FAA "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Id.* Consequently, the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *McMahon*, 482 U.S. at 226, 107 S.Ct. at 2337.

While the Supreme Court has made it clear that predispute arbitration agreements relating to statutory claims are generally enforceable, the court acknowledged that some claims may not be appropriate for arbitration where Congress itself intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Id.* The burden to demonstrate such a contrary congressional intent rests with the party opposing arbitration. *Id.* at 227, 107 S.Ct. at 2337. The party contending that an agreement to arbitrate a statutory claim is not enforceable has the burden of showing that "Congress intended in a separate statute to preclude a waiver of judicial remedies." *Rodriguez*, 490 U.S. at 483, 109 S.Ct. at 1921. To establish that Congress intended to preclude a waiver of a judicial forum for statutory claims, such intent must be manifested in the text of a particular statute, in its legislative history, or by an inherent conflict between arbitration and the underlying purposes of the applicable statute. *McMahon*, 482 U.S. at 227, 107 S.Ct. at 2337. Throughout such an inquiry, the supreme Court has cautioned that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652 (quoting *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941).

The circuit courts that have considered the arbitrability of an ERISA claim have uniformly concluded that nothing in the text of the statute evinces a Congressional intent to preclude arbitration. *See Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir.1996); *Pritzker v. Merrill Lynch*, 7 F.3d 1110, 1117–18 (3d Cir.1993); *Bird v. Shearson Lehman/American Express Inc.*, 926 F.2d 116,

119 (2d Cir.), *cert. denied*, 501 U.S. 1251, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 477–79 (8th Cir.1988). Even though ERISA provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary," 29 U.S.C. § 1132(e)(1), courts have not viewed this provision as establishing Congressional intent to preclude arbitration of ERISA claims. *See Pritzker*, 7 F.3d at 1118 ("such jurisdictional provisions speak only to the issue of which judicial forum is available, and not to whether an arbitral forum is unavailable" (citing *Rodriguez*, 490 U.S. at 482–83, 109 S.Ct. at 1920–21, *McMahon*, 482 U.S. at 227–28, 107 S.Ct. at 2337–38, and *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354)); *Bird*, 926 F.2d at 120.

The circuits that have considered the question have also found that nothing in ERISA's legislative history precludes arbitration. The court in *Pritzker* noted that although ERISA was intended to provide a consistent source of law to "help administrators, fiduciaries and participants to predict the legality of proposed actions," (*Pritzker*, 7 F.3d at 1119 (quoting S.Rep. No. 127, 93rd Cong., 2nd Sess. 29, 1974 U.S.Code Cong. & Admin.News pp. 4639, 4865)), such a general statement of legislative purpose does not indicate that Congress intended to prohibit enforcement of arbitration agreements. *Id.* "So long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.* (quoting *Gilmer*, 500 U.S. at 28, 111 S.Ct. at 1653 (citations omitted)). *See also Bird*, 926 F.2d at 120 (no evidence in legislative history that Congress intended to preclude arbitration of ERISA claims); *Sulit*, 847 F.2d at 478 (same).

The courts have also found that arbitration is not inconsistent with ERISA's underlying purposes. ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," and "to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Arbitration would be inconsistent with the underlying purposes of a statute "where arbitration is inadequate to protect the substantive rights at issue." *McMahon*, 482 U.S. at 229, 107 S.Ct. at 2339. In *Bird*, the court noted that any presumption that arbitration is an inadequate forum in which to resolve disputes based on complex federal statutes is untenable in light of recent Supreme Court decisions. *Bird*, 926 F.2d at 121 (citing *McMahon*, 482 U.S. at 232, 107 S.Ct. at 2340; *Mitsubishi*, 473 U.S. at 633–34, 105 S.Ct. at 3357–58; *Rodriguez*, 490 U.S. at 480, 109 S.Ct. at 1919).

■ We follow the lead of our sister circuits and, for the foregoing reasons, conclude that the text, legislative history, and purposes of the ERISA statute fail to indicate that Congress intended to preclude the use of arbitration to resolve statutory ERISA claims.

■ Even if a particular dispute is not within the original arbitration agreement between the parties, "it is hornbook law that parties by their conduct may agree to send issues outside an arbitration clause to arbitration." *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228, 231 (2d Cir.1982); *Valley Decking Co. v. Local Union No. 9*, 841 F.Supp. 354, 356 (D.Co.1994) ("Agreement to arbitrate may also be implied from the parties' conduct."). "Thus, the parties may agree to arbitration of disputes that they were not contractually compelled to submit to arbitration." *Executone Information Systems, Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir.1994). "[O]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union*, 611 F.2d 580, 584 (5th Cir. 1980). *Accord United Food and Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 946 (10th Cir. 1989); *Mobil Oil Corp. v. Independent Oil Workers Union*, 679 F.2d 299, 302 (3d Cir. 1982).

**1112**

Whether the parties enter into a formal written agreement or merely ask the arbitrator to decide the claims submitted, "they have in effect empowered him to decide the issues stated in the grievance. The grievance itself becomes the submission agreement and defines the limits of the arbitrator's authority." *Piggly Wiggly,* 611 F.2d at 584. "On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute." *Id.*

Although these principles are more often applied in cases where a party becomes dissatisfied with arbitration following an unsatisfactory result, *see, e.g., Executone,* 26 F.3d at 1319–20; *Piggly Wiggly,* 611 F.2d at 582, 584, the same rules preclude a party from withdrawing from an ongoing arbitration in favor of a judicial forum. *Island Creek Coal Sales Co. v. Indiana–Kentucky Elec. Corp.,* 366 F.Supp. 350 (S.D.N.Y. 1973) (after parties had framed the issues for arbitration, one party commenced action for declaratory judgment declaring that its decision to terminate the agreement was not arbitrable; district court granted summary judgment on grounds parties had agreed to submit issues to arbitration). "Where a disagreement exists over the scope of the arbitration agreement, and where the parties nevertheless voluntarily submit their dispute to arbitration, they 'evinc[e] a subsequent agreement for private settlement which would cure any defect in the arbitration clause.'" *Id.* at 353 (quoting *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,* 274 F.2d 805, 809 (2d Cir.)), *cert. denied,* 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960); also citing with approval *Finsilver, Still & Moss, Inc. v. Goldberg, Maas & Co.,* 253 N.Y. 382, 171 N.E. 579 (1930) ("We assume that circumstances may exist in which a party to an arbitration, joining in its proceedings without protest or disclaimer, may be found to have joined by implication in the appointment of the arbitrators, and to have confirmed their jurisdiction, if otherwise defective." (per Cardozo, C.J.)).

### III. *Discussion.*

Christian contends that PC is unable to carry its burden of convincing the court "with positive assurance" that Christian's ERISA claim falls outside the scope of the arbitration clauses contained in the two agreements for several reasons. First, Christian asserts that the arbitration clauses in both agreements apply without limitation to "[d]isputes under the Agreement." Christian argues that this simple and direct language easily encompasses the present controversy, including the ERISA claim. Moreover, he argues, there is no language in either agreement suggesting any intent to exclude the controversy from arbitration.

Second, Christian maintains that the following language of the Employment Agreement demonstrates the parties' express agreement to construe all contractual obligations in light of, and confined within, all applicable laws:

This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations.

Employment Agreement, Section 19. The language "all applicable laws" would encompass ERISA. Therefore, an arbitrator empowered to resolve disputes under the Agreement is inherently empowered to consider and resolve statutory claims in order to define and enforce the rights and obligations of the parties under the Agreement.

Third, Christian maintains that although this court must decide the issue of arbitrability without regard to any assessment of the merits of the underlying ERISA claim, PC's own allegations on the subject confirm that the existence or non-existence of an ERISA plan is a "dispute under the agreement." Thus, PC's contention that there is no ERISA plan turns on its interpretation of the agreements.

In response to the foregoing arguments, PC states that "the arbitrator's sole authority" is "to interpret and apply the provisions of" the Employment Agreement and the PSAR Agreement. PC argues that the issue of whether a PSAR Agreement constitutes a

plan under ERISA involves more than an interpretation and application of the contract language. The portion of the arbitration agreement that PC has excerpted, when read in the context of the full sentence, provides: "The arbitrator's sole authority shall be to interpret and apply the provisions of this Agreement, the arbitrator shall not change, add to, or subtract from, any of the provisions of the Agreement." Thus, the arbitrator's "sole authority" relates to the requirement that the arbitrator not alter any of the provisions of the Agreement; the Agreement does not preclude the arbitrator from interpreting the Agreement in light of pertinent case law, (*i.e.*, the *Fort Halifax Packing Company, Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), and *Herring v. Oak Park Bank*, 963 F.Supp. 1558 (D.Kan.), *appeal docketed*, No. 97–3127 (10th Cir. May 20, 1997), cases PC urges in support of its position that the agreements do not constitute a "plan" under ERISA).

PC relies upon *Johnson v. St. Frances Xavier Cabrini Hosp.*, 910 F.2d 594 (9th Cir.1990). In *Johnson*, the Ninth Circuit held that an arbitrator is generally not considered competent to decide ERISA claims: "Arbitrators, many of whom are not lawyers, lack the competence of courts to interpret and apply statutes as Congress intended." *Id.*, 910 F.2d at 596 (quoting *Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir. 1984)). We are not persuaded by PC's reliance on *Johnson*.

First, we observe that any precedential value of *Johnson* is severely undercut by ample, recent, Supreme Court authority favoring the arbitrability of statutory claims and more recent case law from our sister circuits holding specifically that · ERISA claims are arbitrable. In the time since *Amaro* was decided, the Supreme Court has stated " 'we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals' should inhibit enforcement of the [Federal Arbitration] Act 'in controversies based on statutes.' " *McMahon*, 482 U.S. at 226, 107 S.Ct. at 2337 (quoting *Mitsubishi*, 473 U.S. 614, 626–27, 105 S.Ct. 3346, 3354). *See Southside Internists Group PC Money*

*Purchase Pension Plan v. Janus Capital Corp.*, 741 F.Supp. 1536, 1539–42 (N.D.Ala. 1990) (questioning *Amaro* and similar cases in the context of developing Supreme Court precedent). *See also Fabian Financial Services v. Kurt H. Volk, Inc. Profit Sharing Plan*, 768 F.Supp. 728, 731–32 (D.C.Cal.1991) (declining to follow *Johnson* in light of "persuasive and binding" Supreme Court precedent). PC does not dispute or even acknowledge the strong federal policy favoring arbitration and the expansive interpretation courts are to afford to arbitration agreements. Nor does PC attempt to rebut the principle that any ambiguity in an arbitration clause must be resolved in favor of arbitration. *See Esposito v. Hyer, Bikson & Hinsen, Inc.*, 709 F.Supp. 1020, 1022 (D.Kan. 1988).

We note that PC's argument perpetuates the discredited hostility toward arbitration: "an arbitrator likely would have considerably less expertise than a federal judge as it concerns a determination of [ERISA] law." PC's brief, at 7. Such " 'mistrust of the arbitral process,' however, has been undermined by our recent arbitration decisions." *Gilmer*, 500 U.S. at 34 n. 5, 111 S.Ct. at 1656 n. 5 (citing *McMahon*, 482 U.S. at 231–32, 107 S.Ct. at 2340–41.)

Finally, in an effort to distinguish the case law from the Second, Third, Fifth, and Eighth Circuits recognizing the arbitrability of ERISA claims, PC characterizes the issues in this case as "more technical," but acknowledges that an arbitrator might be competent to ·decide breach of fiduciary duty claims under ERISA. As Christian aptly points out, PC's attempted distinction is self-defeating. An arbitrator called upon to decide a breach of fiduciary duty claim must apply several provisions of ERISA (*see generally*, 29 U.S.C. §§ 1101–1114), including a statutorily defined duty of care that requires (among other things) conduct "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [specified provisions of ERISA]," 29 U.S.C. § 1104(a)(1)(D). Having conceded that an arbitrator is competent to decide sophisticated breach of fiduciary duty claims under

ERISA, PC cannot be heard to assert this case is somehow beyond the competence of an arbitrator.

Next, Christian contends that even without regard to the specific arbitration agreements, the dispute is arbitrable because the parties agreed to submit it to arbitration, and did so, earlier this year. We agree. On March 31, 1997 (well before PC filed its May 15, 1997 declaratory judgment action), PC filed an answering statement with AAA, which included a counterclaim against Christian for an accounting. Nowhere in these arbitration submission documents is there any assertion or defense by PC denying the arbitrability of the ERISA claim.

The court finds that the very issue PC now attempts to present to the court is the identical issue that PC has already presented to an arbitrator. PC expressly raised in arbitration its contention that "The PSAR Agreement does not constitute an employee benefit plan governed by ERISA," and asked the arbitrator to determine "that the claims made by Christian lack merit." PC's Answering Statement in arbitration, ¶¶. 3, 4, and 6. We view PC's counterclaim for an accounting as further evidence of PC's intention and agreement to arbitrate any and all issues between the parties.

PC, in its brief, proceeds to cite and discuss the recent opinion of *Herring v. Oak Park Bank*, 963 F.Supp. 1558 (D.Kan.), *appeal docketed*, No. 97–3127 (10th Cir. May 20, 1997). While this case extensively addresses whether a phantom stock agreement constitutes a "plan" under ERISA, the opinion says nothing about the arbitrability of an ERISA claim. We find no reason why this authority could not be argued to, and considered by, the arbitrator.

In sum, we conclude that PC has failed to overcome the presumption of arbitrability by demonstrating with "positive assurance" that the arbitration clauses in question are not arbitrable. Additionally, we find that even if the arbitration clauses did not encompass the ERISA question, the scope of the issues submitted to the arbitrator controls his authority, and the record reflects the parties' submission of the ERISA dispute to the arbitrator. Accordingly, Christian's motion to stay proceedings until completion of pending arbitration should be granted.

The court further finds, for the reasons well-stated in Christian's motion for extension of time to answer, that an extension should be and hereby is granted. Christian is given until ten days after the court lifts the stay to file any answer or otherwise respond to plaintiff's complaint.

IT IS THEREFORE ORDERED that the application of defendant R. Scott Christian to stay proceedings until completion of pending arbitration (Doc. # 8) is granted.

IT IS FURTHER ORDERED that defendant Christian's motion for extension of time to answer or otherwise respond to plaintiff's complaint (Doc. # 6) is granted. The deadline for Christian to answer or otherwise respond to plaintiff's complaint is hereby extended until ten days after the court lifts the stay.