**ADVANCED TECHNOLOGY ASSOCIATES, INC.,**
Plaintiff,

v.

**Timothy J. SELIGMAN, Thomas D. Perrie, and Tele–Systems, Inc.,**
Defendants.

**No. CIV. A. 97–2374–GTV.**

United States District Court,
D. Kansas.

Feb. 12, 1999.

Robert M. Pitkin, Levy & Craig, P.C., Kansas City, MO, for Advanced Technology Associates, Inc., plaintiff.

Stanley D. Davis, Patricia A. Konopka, Stinson, Mag & Fizzell, P.C., Kansas City, MO, J. Alexander Porter, Atlanta, GA, for Timothy J. Seligman, Thomas D. Perrie, Tele–Systems, Inc., defendants.

### MEMORANDUM AND ORDER

VANBEBBER, District Judge.

Plaintiff brought this diversity action seeking damages resulting from defendants' alleged breach of a software license agreement, an account settlement agreement, and a service agreement. Because many of plaintiff's claims were subject to arbitration under the terms of the parties' contractual agreements, the court stayed the case pending arbitration. The arbitration process is now complete. The case is before the court on plaintiff's motion to vacate and/or modify the arbitration award (Doc. 40) and defendants' motion to confirm the arbitration award (Doc. 31). For the reasons explained in this memorandum and order, the court affirms the arbitration award, grants defendants' motion, and denies plaintiff's motion.

## I. FACTUAL BACKGROUND

Defendants Timothy J. Seligman and Thomas D. Perrie comprise the board of directors of defendant Tele–Systems, Inc., the owner and developer of computer software called "Unigate." On April 20, 1995, the parties entered into a written Systems Sales Agreement and a separate written Service Agreement. The purpose of the Systems Sales Agreement was to grant plaintiff the exclusive right to market defendants' Unigate systems and other systems subject to the agreement. The Service Agreement required defendants to operate and manage a Unigate "service bureau."

According to plaintiff, defendants never set up, operated, or managed a service bureau as required by the Service Agreement. As a result, plaintiff incurred significant debts and expenses. Although defendants owed plaintiff a substantial amount of money for their breach of the Service Agreement, plaintiff agreed to restructure the parties' business arrangement. On February 28, 1997, the parties executed a written Account Settlement Agreement. Under the terms of this agreement, the prior Service Agreement and Systems Sales Agreement were canceled and the parties mutually exchanged releases regarding prior claims and liabilities.

The Account Settlement Agreement executed by the parties was expressly contingent upon "the signing of a Software License Agreement ... and is null and void if the Software License Agreement is not signed by both parties." Accordingly, the parties simultaneously executed a Software License Agreement. Under the Software License Agreement, defendants were obligated to provide plaintiff with the following: (1) an exclusive license to sublicense the object code form of all licensed programs including Unigate; (2) a non-exclusive license to use the Source Code programs; and (3) a non-exclusive license to use various support materials in connection with the licensed programs. In turn, plaintiff was obligated by the agreement to make "Minimum Development Payments" to defendant in the amount of $30,000.00 per month.

Shortly thereafter, a dispute arose between the parties over the terms of the Software License Agreement. Plaintiff alleges that defendants failed to provide the source code, and defendants allege nonpayment of the "Minimum Development Payments". On June 19, 1997, defendants sent plaintiff a demand for arbitration pursuant to paragraph 16 of the Software License Agreement. Paragraph 16 provides, in pertinent part:

> 16. *ARBITRATION.* All disputes which arise under or in connection with this Agreement shall be resolved by arbitration under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then pertaining.... Any arbitration hereunder shall be held at the Atlanta, Georgia office of the AAA unless the parties agree otherwise. The subject matter of this agreement concerns interstate commerce within the meaning of the Federal Arbitration Act and arbitration hereunder shall be subject to the provision of the Federal Arbitration Act and discovery may be had under the Federal Rules of Civil Procedure.

In spite of this provision, on July 7, 1997, plaintiff filed in the District Court of Johnson County, Kansas, a "Petition for Recission of Contracts, Damages, Foreclosure of Security Interest in Personal Property, Restraining Order and Temporary Injunction, and Appointment of Receiver and Alternately, for Specific Performance and Damages." Specifically, plaintiff asserted the following claims:

> Count I: Recission of the Software License Agreement and Account Settlement Agreement because of fraudulent misrepresentations of fact by defendants.

> Count II: Recission of the Software License Agreement and Account Settle-

ment Agreement because of delay in defendants' performance.

Count III: Breach of the Service Agreement by defendants.

Count IV: Foreclosure of defendants' security interest in Unigate (based on defendants' breach of the Service Agreement).

Count V: Restraining order and temporary injunction concerning Unigate (based on defendants' breach of the Service Agreement).

Count VI: Appointment of a receiver to preserve and manage the Unigate object code and source code (based on defendants' breach of the Service Agreement).

Count VII: Specific performance of the Software License Agreement.

Count VIII: Damages for breach of the Software License Agreement.

Defendants removed the action to this court and subsequently filed a motion to stay the action pending arbitration. In deciding this motion, the court concluded that the arbitration agreement's "arise under or in connection with" language governed only the issues of recission and breach of the Software License Agreement (Counts I, II, VII, and VIII). It did not govern Counts I and II, as they related to the Account Settlement Agreement, or Count III and its corresponding remedy counts—Counts IV, V, and VI. Accordingly, the court granted defendants' motion to stay and ordered that the issues of recission and breach of the Software License Agreement be submitted to arbitration. The court further ordered that judicial resolution of Counts I and II, as they related to the Account Settlement Agreement, and Count III was stayed pending arbitration.

Prior to the court's issuance of the above-mentioned order, the parties commenced arbitration proceedings. On July 29, 1997, the American Arbitration Association in Atlanta, Georgia administratively appointed William D. Friend as an arbitrator and asked the parties to submit any objections to this appointment. Receiving no objections, Mr. Friend's appointment was confirmed.

On September 27, 1997, plaintiff filed a counterclaim in the arbitration proceeding stating, in pertinent part, as follows:

TSI and ATA entered into a certain Software License Agreement (the "Agreement") effective January 1, 1997. TSI was obligated under the Agreement, among other things, to provide ATA with working source code for its Unigate software. TSI has failed and refused to so provide ATA with source code for Unigate. First and foremost, ATA requests recission of the Agreement (and the accompanying Account Settlement Agreement) based on: (a) fraud by TSI ...; and (b) TSI's nonperformance of the Agreement ....

Plaintiff and defendants also submitted briefs to the arbitrator setting forth their respective contentions.

On January 12, 1998, an arbitration hearing was conducted in the Charlotte, North Carolina offices of the AAA before Mr. Friend as arbitrator. As required by the parties' Software License Agreement, the arbitration was conducted pursuant to the Commercial Arbitration Rules of the AAA. On February 10, 1998, the arbitrator issued his findings and award.

According to the arbitration award, the case turned on a cental question: "At the time TSI failed to comply with ATA's demand for Unigate Source Code, was ATA in material breach of the Software License Agreement by virtue of its failure to pay Minimum Development Payments?" The arbitrator concluded that plaintiff materially breached the Software License Agreement when it failed to make the required Minimum Development Payments. For this same reason, the arbitrator found that defendants were legally excused from performing under the Software License Agreement and that defendants lawfully terminated plaintiff's license in the Unigate source code and object code in De-

cember 1997. As a result of this ruling, the arbitrator ordered the following award:

(1) ATA shall pay to TSI the sum of $80,520.00 for damages within thirty (30) days from the date of this Award;

(2) In favor of TSI and against ATA for attor ney's fees in the amount of $52,282.72.[1]

(3) All counterclaims brought by ATA against TSI are denied, including but not limited to ATA's prayer for recission of the Software License Agreement and the Account Settlement Agreement.

(4) ATA is ordered to comply with Section 4.4 of the Software License Agreement within (30) days following the date of this award by returning to TSI (F.O.B. TSI's office), the original and all copies, in whole or in part, in any form, of all Licensed Programs and Licensed Materials (as such terms are defined in the Software License Agreement) in ATA's custody, possession or control.

(5) The compensation and expenses of the arbitrator totaling four thousand five hundred dollars ($4,500.00) shall be borne equally by the Parties.

(6) The administrative fees and expenses of the American Arbitration Association totaling three thousand one hundred twenty five dollars ($3,125.00) shall be borne equally by the Parties. Therefore, TSI shall pay to ATA the sum of two hundred fifty dollars ($250.00) for that portion of its share of administrative fees and expenses previously advanced by ATA to the Association.

This Award is in full settlement of all claims and counterclaims submitted to this arbitration.

On March 6, 1998, defendants filed a motion to confirm the arbitration award in this court. Plaintiff responded by filing a brief with arguments in opposition to defendants' motion to confirm. On April 1, 1998, plaintiff filed a motion to vacate and/or modify the arbitration award in the United States District Court for the Northern District of Georgia. United States District Judge Julie E. Carnes dismissed plaintiff's motion, ruling that plaintiff's motion should have been filed in the District of Kansas. Pursuant to Judge Carnes' order, plaintiff filed its instant motion to vacate and/or modify in this court.

## II.  DISCUSSION

Pursuant to sections 10 and 11 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, plaintiff seeks to vacate or modify the arbitration award on the grounds that the arbitrator exceeded his powers. Plaintiff argues that the arbitrator exceeded his powers by the following: (1) ruling that the Account Settlement Agreement should not be rescinded due to defendants' fraud or undue delay (Counts I and II); (2) ruling that defendants did not breach the Service Agreement (Count III); (3) ruling on a dispute with an amount in controversy greater than the contractually-agreed-upon $100,000.00 limit; and (4) awarding attorney's fees not related to the arbitration proceeding. If the court concludes that the arbitrator did not exceed his powers and denies plaintiff's motion, the arbitration award "must be confirmed." *See* 9 U.S.C. § 9.

*A.  Ruling on the Account Settlement Agreement*

Plaintiff's first argument is that the arbitrator exceeded his powers by ruling that defendants did not breach the Account Settlement Agreement. According to plaintiff, the court previously ruled that Counts I and II as they concern recission

---

**1.** Under section 17 of the Software License Agreement, the prevailing party in arbitration "shall be entitled to an award of its reasonable attorneys' fees in connection with the arbitration proceedings." Pursuant to section 17, the arbitrator awarded defendants $22,917.00 for its attorney's fees directly related to the arbitration proceeding and $29,-365.27 for its attorney's fees directly related to the litigation initiated by plaintiff's in this court.

**1316**

of the Account Settlement Agreement were not subject to arbitration. While the court agrees that these issues were not covered by the original arbitration agreement, the arbitrator did not exceed his powers.

■ "Even if a particular dispute is not within the original arbitration agreement between the parties, 'it is hornbook law that parties by their conduct may agree to send issues outside an arbitration clause to arbitration.'" *Peruvian Connection, Ltd. v. Christian,* 977 F.Supp. 1107, 1111 (D.Kan.1997) (quoting *Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 231 (2d Cir.1982)). "Whether the parties enter into a formal written agreement or merely ask the arbitrator to decide the claims submitted, 'they have in effect empowered him to decide the issues stated in the grievance. The grievance itself becomes the submission agreement and defines the limit of the arbitrator's authority.'" *Id.* at 1112 (quoting *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Indep. Truck Drivers Union,* 611 F.2d 580, 584 (5th Cir. 1980)).

In this case, it is undisputed that plaintiff submitted a counterclaim to the arbitrator requesting recission of the Software License Agreement and the accompanying Account Settlement Agreement based on defendants' alleged fraud and nonperformance. This same claim was also submitted to the arbitrator in plaintiff's pre-hearing trial brief. In its brief, plaintiff stated that its "primary claim is that the Software License Agreement (and the accompanying Account Settlement Agreement) should be rescinded so that [plaintiff] can pursue its claims against [defendants] for moneys advanced and breach of the Service Agreement in federal court in Kansas." Defendants contend that plaintiff may not voluntarily submit a claim to arbitration, await the outcome, and then, if the decision is unfavorable, claim the arbitrator exceeded his powers in ruling on the submitted claim. The court agrees.

■ After a careful review of the record, the court concludes that the issue concerning recission of the Account Settlement Agreement was submitted to arbitration by the parties. Furthermore, it is implicit from the arbitrator's ruling that he made a determination that this issue was within the scope of issues submitted to him. "An arbitrator's view of the scope of the issue committed to his care is entitled to the same far-reaching respect and deference as is normally accorded to the arbitrator's interpretation of the ... agreement itself." *El Dorado Technical Servs. v. Union Gen.,* 961 F.2d 317, 321 (1st Cir.1992). Accordingly, no grounds exist to vacate or modify the arbitrator's ruling that defendants did not breach the Account Settlement Agreement.

*B. Ruling That Defendants Did Not Breach the Service Agreement*

Plaintiff next claims that the arbitrator exceeded his power by ruling that defendants did not breach the Service Agreement. In the arbitration award, the arbitrator ruled that all counterclaims brought by plaintiff in the arbitration proceeding were denied. Plaintiff argues that the arbitrator's denial of its counterclaims effectively rules on the issue of its breach of the Service Agreement claim. The court disagrees. The arbitrator ruled only on those issues raised in plaintiff's counterclaim. The court concludes that plaintiff's breach of the Service Agreement claim was not a subject of the arbitration and that the arbitrator did not rule on it.

*C. Ruling on a Dispute with an Amount in Controversy Greater than $100,000.00*

■ The arbitration provision at issue in this case provides that "[i]f the amount in dispute is more that $100,000.00, then the matter shall be heard by a panel of three (3) arbitrators." When the parties submitted their dispute to the arbitrator, defendants claimed $80,520.00 in damages for plaintiff's failure to make required payments. Additionally, defendants claimed

$10,917.20 for attorney's fees directly related to the arbitration proceeding, and $29,365.72 for attorney's fees related to litigation in this court. Plaintiff now argues that, because defendants claimed, and were awarded, damages and attorney's fees totaling more than $100,000.00, the arbitrator exceeded his powers under section 16 and that the award must be vacated. The court disagrees.

It is undisputed that neither plaintiff nor defendants objected to arbitrating their dispute to a single arbitrator. Accordingly, the parties, by submitting their claim to the arbitrator without objection, redefined his authority and empowered him to decide their controversy regardless of the amount in dispute. *See Piggly Wiggly,* 611 F.2d at 584 ("The grievance itself ... defines the limit of the arbitrator's authority."). Even if the court were to accept plaintiff's questionable interpretation of the arbitration provision, it is clear that the arbitrator did not decide any issue beyond the power granted to him by the parties.

 Alternatively, the court refuses to vacate the arbitration award because plaintiff is challenging the arbitrator's interpretation of the Software License Agreement. Contract interpretation is the exclusive domain of the arbitrator. "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). It is implicit from the arbitration award that the arbitrator interpreted the term "amount in dispute" in section 16 as not encompassing any potential award of attorney's fees. This interpretation of the contract will not be reviewed or disturbed by the court.

*D. Award of Attorney's Fees Not Related to the Arbitration Proceeding*

 Section 17 of the Software License Agreement provides that "the pre-vailing party shall be entitled to an award of its reasonable attorney's fees in connection with the arbitration proceedings." The arbitrator deemed defendants a prevailing party and awarded them $22,917.00 for its attorney's fees directly related to the arbitration proceeding and $29,365.27 for its attorney's fees directly related to the litigation initiated by plaintiff's in this court. Plaintiff's final argument is that the arbitrator exceeded his powers by awarding attorney fees for defense counsel's billings related to the litigation in this court. In essence, plaintiff is contending that the arbitrator misinterpreted the "in connection with" language of section 17 of the Software License Agreement as encompassing attorney's fees related to the litigation in this court.

As stated above, interpretation of the Software License Agreement is the exclusive domain of the arbitrator and the court has no business overruling him even if it interprets the agreement differently. *See id.* The court will not second guess the arbitrator's interpretation of section 17. Accordingly, the court confirms the arbitration award.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion to confirm the arbitration award (Doc. 31) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to vacate or modify the arbitration award (Doc. 40) is denied.

IT IS FURTHER ORDERED that plaintiff has ten (10) business days from the filing of this memorandum and order to oppose or otherwise respond to defendants' motion for summary judgment (Doc. 28).

The clerk shall mail copies of this order to counsel of record for the parties.

**IT IS SO ORDERED.**